THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v. JOSEPH FRANCIS CAPUTO, Respondent.

THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v. JAMES MICHAEL CAPUTO, Respondent.

Third Department, March 22, 1973.

*Philip A. Berke, District Attorney,* for appellants.

*E. Stewart Jones, Jr.,* for respondents.

STALEY, JR., J. These are appeals from an order of the County Court of Washington County, entered August 3, 1972, which granted a motion by defendants to suppress evidence.

The facts are not in dispute. On March 26, 1972, in the late afternoon, Trooper Werthmuller received a telephone call at the New York State Police substation at South Glens Falls from a confidential informer, conceded by defendants to be reliable, who advised him that defendants were on their way to Fort Edward with a supply of drugs; that they were driving a blue Riviera car with Florida registration plates, and should be arriving there shortly. Trooper Werthmuller advised the deskman of the telephone call and, while proceeding to Fort Edward, radioed Trooper Kelleher advising him of the call. As he was proceeding west on Route 197, Trooper Werthmuller observed defendant, Joseph Caputo, driving a blue Riviera with Florida

registration in an easterly direction towards Fort Edward and with a passenger in the front seat. He turned his troop car around, alerted Trooper Kelleher, and followed defendants into Fort Edward where he stopped defendant's car on Broadway near the school, about 15 minutes after the informant's telephone call. Trooper Werthmuller then proceeded to defendant's car and asked Joseph Caputo to produce his license and registration, which was done. After checking the license plates, Trooper Werthmuller retained the license and registration and went to the passenger side of the car where defendant, James Caputo, identified himself. James Caputo was then directed to get out of the car. As he did so, Trooper Werthmuller observed a set of scales in the back seat, a can of mace on the floor and a box of .25 calibre pistol ammunition on the console. Joseph Caputo was then asked for the keys to the trunk of the car. A search of the trunk produced green plastic bags containing marijuana, and James Caputo was placed under arrest for possession of a dangerous drug. A suitcase in the trunk was then opened and found to contain more bags of marijuana. In the meantime, Troopers Kelleher and Alden had arrived, and a .25 calibre pistol with a clip containing six rounds of ammunition was found on defendant Joseph Caputo. He was also placed under arrest. It is conceded that the car was not stopped because of a violation of any vehicle and traffic law or regulation; that the operator's license and the registration were in order; that Trooper Werthmuller observed nothing suspicious or illegal prior to asking James Caputo to get out of the car; and that the only basis for a belief that there were drugs in the car was the informant's telephone call.

Joseph Caputo and James Caputo have each been indicted for the crimes of criminal possession of a dangerous drug in the third degree (Penal Law, § 220.20), and unlawfully possessing noxious material (Penal Law, § 270.05). In addition, Joseph Caputo was indicted for the crime of possession of a dangerous weapon as a felony. (Penal Law, § 265.05, subd. 2.)

The informant here was well known to the police and during the prior year, as a result of his information, 20 arrests had been made, and approximately 15 convictions had been obtained. In addition, the trooper observed the can of mace in open view on the floor of the car, the possession of which constituted a crime.

By reason of its mobility, the search of a car without a warrant might be reasonable (*Cooper* v. *California,* 386 U. S. 58), and whether such search is reasonable depends upon whether

probable cause existed to sustain the arrest and search. (*McCray* v. *Illinois*, 386 U. S. 300.)

A search of a car may at times be justified by the belief '' reasonably arising out of the circumstances known to the seizing officer, that an automobile or other vehicle contains that which by law is subject to seizure or destruction ''. (*Carroll* v. *United States*, 267 U. S. 132, 149.)

'' In dealing with probable cause, however, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'' (*Brinegar* v. *United States*, 338 U. S. 160, 175.)

The totality of the circumstances herein completely justified the search and seizure, and the arrests of the defendants. (*People* v. *Rowell*, 27 N Y 2d 691.) The motions to suppress should have been denied.

The order should be reversed, on the law and the facts, and the motions to suppress the evidence seized from the automobile, should be denied.

HERLIHY, P. J. (concurring). The reliability of the informant was conceded by the defendant and, as found by the trial court, there remained only the question of whether the information supplied was of such reliability and credibility as to permit the search of the automobile by the police officers without a warrant and which resulted in the criminal charges now under consideration.

In my opinion, under the present circumstances, if the police officers had not stopped the automobile, they would have been derelict in their duties. The officers who knew one of the defendants, after checking for motor vehicle violations, requested the passenger to alight from the automobile which he did. The officer then observed in the car a set of scales on the back seat and a can of mace on the floor of the automobile. He also observed a box of .25 calibre pistol ammunition on the console of the car. These observations, together with the information already supplied, constituted a sufficient basis for continuing the search by directing the defendant to open the trunk of the automobile where the officers found the drugs. Thereafter, a .25 calibre semi-automatic pistol was taken from the defendant Joseph whom the police officer testified he recognized and had known prior to the particular date.

These facts make clear the distinction between the present appeal and where a police officer, without probable cause, stops

an automobile and conducts an unlawful search. (See *People* v. *Castro*, 29 N Y 2d 324; cf. *People* v. *Amanatides*, 39 A D 2d 1010.)

GREENBLOTT, J. (dissenting). Although it is well recognized that the tests applied to the validity of warrantless automobile searches are not as rigid as those applied to immovable premises, it is nevertheless fundamental that such a search must be incidental to a lawful arrest, supported by probable cause, or following closely in time and place an observation by the police of items of contraband in plain view when the police were in a lawful position to obtain such a view. None of these elements existed in the present case. It is clear that the search was not conducted incidental to a lawful arrest, because the officer testified that he did not place the defendants under arrest until after discovering the marijuana in the trunk of the automobile.

Nor did the tip supplied by the unidentified informant furnish probable cause for a search, for although the reliability of the informant was conceded, it is also necessary to demonstrate that his information was reliable under the second prong of the two-pronged test laid down in *Aguilar* v. *Texas* (378 U. S. 108) and adopted by the Court of Appeals in *People* v. *Wheatman* (29 N Y 2d 337, 344, app. on other grounds 31 N Y 2d 12). There was no showing here of a factual basis for the informant's information. At best, the information was the mere conclusion of the informant, who did not even indicate that he had observed the activities of the defendants or that he spoke with personal knowledge. It is also significant that the informant failed to identify the type of drugs alleged to be in the defendants' possession. "For all that appears, the source here merely suspected, believed or concluded that there were narcotics in [defendants'] possession" (*Aguilar* v. *Texas, supra,* pp. 113–114). There is no basis for judging the persuasiveness of the facts relied on to show probable cause. Mr. Justice STALEY, in concluding that the reliability of the informant was established, points to the fact that a can of mace was observed in open view on the floor of the car.[1] In my opinion, this factor is irrelevant. The informant had not indicated that a can of mace might be found, and mace is in no way suggestive of marijuana or other drugs. Therefore, its presence in no way verifies or substantiates the accuracy of the tip which was actually given. I also find that *McCray* v. *Illinois* (386 U. S. 300) is not controlling. In that case, the officers " described with specificity ' what the informer actually said, and why the officer thought

---

1. Whether or not the police officer was rightfully in a position to obtain this open view is a question I shall deal with subsequently.

the information was credible.' * * * The testimony of each of the officers informed the court of the ' underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the * * * information [was] '' reliable '' ' '' (*McCray* v. *Illinois, supra*, p. 304). In the present case, there is no such testimony, but only as noted, the mere unsupported conclusion of the informer. It must therefore be concluded that the informant's tip did not establish probable cause to stop and search the defendants' vehicle.

This brings me to consideration of whether there was a lawful observation by the officer of contraband in plain view such as would justify a further search. Although I have determined that there was no probable cause for stopping the vehicle and the officer did not pretend to have done so for the purposes of a routine traffic check, I will nevertheless deal with this issue as if such a check might have been the proper purpose for the stop. When the officer stopped the car, he asked the driver, Joseph Caputo, to produce his driver's license and registration, which was done. The officer checked the license plates, and found nothing amiss. Up to this point, the officer had observed no contraband or other suspicious material, nor was there anything suspicious about the behavior of the defendants, who were the sole occupants of the vehicle. Hence, there was no valid or lawful reason for any further detention of the defendants. Nevertheless, the officer retained the license and registration and directed the defendant James Caputo, the passenger, to get out of the car. It was at this point that he observed a set of scales, a can of mace, and a box of ammunition in '' plain view ''. Of course, it is well settled that contraband in '' plain view '' may be seized and in some circumstances may justify a further search, but it is equally clear that this rule is not without qualification, for it has repeatedly been said that only where the officer '' has a right to be in the position to have that view '' will the seized items be admitted into evidence because they are not the products of an illegal search. (*Harris* v. *United States*, 390 U. S. 234, 236.) Here, the officer may have rightly been where he was, but he had no right to improve his view by improperly directing the displacement of an obstacle, albeit a human obstacle. In no sense can the officer's observation of the mace and ammunition be said to have been fortuitous, as it might have been had James Caputo stepped out of the car voluntarily, revealing the items in question (cf. *People* v. *Battle,*

12 N Y 2d 866; *People* v. *Scianno,* 20 A D 2d 919, 920). At the moment the officer ordered James Caputo out of the car, which he no longer had a right to do nor any reason for doing it, thereby creating a view which had previously been closed to him, an illegal search commenced, and any extension of that search was equally invalid.

Mr. Justice STALEY is of the opinion that " the totality of the circumstances " justified the search. I cannot agree, since it is clear that from the moment the officer received the tip until the moment he opened the trunk of defendants' car, he had no probable cause for conducting such a search, nor did any justifying circumstances arise, except perhaps as a result of the officer's improper actions, until the final act, and, of course, the discovery of contraband cannot validate an otherwise unlawful search.

I cannot agree with Presiding Justice HERLIHY's opinion that the officer would have been derelict in his duties had he not stopped the automobile. In my view the officer was derelict in failing to ascertain such facts as would have established the reliability of the informant's information.

I, therefore, vote to affirm the decision of the County Court which granted defendants' motion to suppress the evidence.

MAIN, J., concurs with STALEY, JR., J.; HERLIHY, P. J., concurs in a separate opinion; GREENBLOTT, J., dissents and votes to affirm in an opinion in which COOKE, J., concurs.

Order reversed, on the law and the facts, and motions to suppress evidence seized from the automobile, denied.