Fuchsberg, J.
All three defendants appeal from separate orders affirming their convictions for criminal possession of dangerous drugs rendered after a joint jury trial. All three were apprehended while they were together inside an automobile which also contained a large quantity of cocaine, stored in a manila envelope underneath the front seat. Their arrest stemmed from information received by police from an informer.
At trial, after the arresting officers testified to finding both the defendants and the drugs in the same car, the prosecution utilized the statutory presumption of possession authorized by section 220.25 of the Penal Law[1] to complete its prima facie case against defendants. That statute reads: "The presence of a dangerous drug in an automobile, other than a public omnibus, is presumptive evidence of knowing possession thereof by each and every person in the automobile at the time such drug was found”.
Defendant Low testified in his own behalf. He attempted to explain that he was in the car by accident and did not know the drugs were there. Defendants Leyva and Garcia put in no evidence and did not take the stand.
Each defendant now challenges the use of the presumption of possession. Low contends that his testimony, directed toward rebutting any knowing possession of the drugs, should have been sufficient to remove the presumption from the jury’s consideration. Defendants Garcia and Leyva contend that alleged inconsistencies in the police officer’s testimony for the prosecution should have the same rebuttal effect with respect to them; if their assertion is correct, the point would benefit Low as well. All three argue that the Judge’s handling of the presumption in his charge to the jury contained error. Finally, all three argue that the identity of the police informer should have been revealed to them.
We find no error and, accordingly, we affirm the convictions.
The thrust of defendants’ objections is clearly directed toward what they consider the inherent unfairness of the statutory presumption. Some comment on the presumption itself is, therefore, a necessary preliminary to our discussion.
Statutory presumptions, particularly when used in criminal cases, have occasioned much comment among Judges and *165 scholars. The debate centers on the tensions produced by attempts to balance prosecutorial necessity against the basic jurisprudential requirement that no liability be imposed upon a defendant until every element of the case against him has been proved beyond a reasonable doubt. (See Note, Constitutionality of Rebuttable Statutory Presumptions, 55 Col L Rev 527, 531; cf. Mullaney v Wilbur, 421 US 684.)
On the one hand, a statutory presumption of possession which operated to shift the burden of proof to a defendant unless he produced rebuttal evidence might well be unconstitutional (Tot v United States, 319 US 463; United States v Gainey, 380 US 63; People v Terra, 303 NY 332, 334, app dsmd 342 US 938; cf. Mullaney v Wilbur, supra; Note, 2 St Mary’s LJ 115, 118 [collecting cases]; see, generally, Christie and Pye, Presumptions and Assumptions in the Criminal Law: Another View, 1970 Duke LJ 919). On the other hand, denying the prosecution the use of any inferential tool in cases like the present one would lead to the "practical impossibility of proving * * * actual participation in the illegal activities.” (United States v Gainey, 380 US, at p 65.) In the absence of a legislative presumption in drug cases, for example, many drug traffickers could operate with impunity simply by ensuring that the contraband was in some part of the transporting vehicle and not on their persons. (See Comment, Possession of Dangerous Drugs in a Car-New York’s Criminal Presumption Statute, 21 Buffalo L Rev 188, 189-192.)
In a series of cases, the United States Supreme Court has provided some guidelines for use in effecting a proper balance. The guidelines begin with the requirement that there be a rational connection between the facts which are proved and the one which is to be inferred with the aid of the presumption. Thus, in Tot v United States (319 US, at p 469), the court explained that it is the presence of a rational connection which prevents the burden of proof from shifting impermissibly to the defendant. And the court there also made clear that, absent a rational connection, no amount of prosecutorial necessity would serve to validate a presumption. Practical, prosecutorial need is a necessary ingredient but it is not, in and of itself, sufficient to justify the use of a presumption.
In later cases, the court went on to state that a rational connection between facts proved directly and ones to be inferred from them requires a "substantial assurance that the presumed fact is more likely than not to flow from the proved *166 fact on which it is made to depend”. (Leary v United States, 395 US 6, 36; see, also, Turner v United States, 396 US 398, 407.) Our court has exated an even higher standard of rational connection. As we said in People v McCaleb (25 NY2d 394, 404), the connection must assure "a reasonably high degree of probability” that the presumed fact follows from those proved directly. (See, also, People v Kirkpatrick, 32 NY2d 17, app dsmd 414 US 948.)
The Supreme Court also pointed out, at some length, that the judgment of the Legislature, provided it is based on common experience or on reliable empirical data, is to be given great respect by the courts. (United States v Gainey, supra, at p 67; Leary v United States, supra, at p 39.) Given the peculiar and unique circumstance an automobile provides, which has been recognized in a number of related ways (see Carroll v United States, 267 US 132; Brinegar v United States, 338 US 160; Chambers v Maroney, 399 US 42; People v McCaleb, supra), it cannot be said that statutory recognition of the likelihood that all persons inside a car carrying quantities of drugs know about them and are involved in their transport is irrational.[2] Indeed, the 1972 Interim Report of the Temporary State Commission to Evaluate the Drug Laws states it very well:
"We believe, and find, that it is rational and logical to presume that all occupants of a vehicle are aware of, and culpably involved in, possession of dangerous drugs found abandoned or secreted in a vehicle when the quantity of the drug is such that it would be extremely unlikely for an occupant to be unaware of its presence * * *
"We do not believe that persons transporting dealership quantities of contraband are likely to go driving around with innocent friends or that they are likely to pick up strangers. We do not doubt that this can and does in fact occasionally happen, but because we find it more reasonable to believe that the bare presence in the vehicle is culpable, we think it *167 reasonable to presume culpability in the direction which the proven facts already point. Since the presumption is an evidentiary one, it may be offset by any evidence including the testimony of the defendant, which would negate the defendant’s culpable involvement.” (Controlled Substances, Dangerous Unless Used as Directed, NY Legis Doc, 1972, No. 10, p 69.)
The situation described in the report is precisely the one before us; over a pound of cocaine was found in the car with these defendants. Moreover, as the report also notes, the presumption is evidentiary and rebuttable, whether by defendant’s own testimony or by any other evidence in the case, including the inherent or developed incredibility of the prosecution’s own witnesses. A jury is not to be told that it must find defendants guilty if the prosecution proves that they and drugs were present in a car together; it is only to be told that it may so find. This affords added protection against the possibility that a presumption might operate to direct a verdict (Tot v United States, 319 US 463, supra; United States v Gainey, 380 US 63, supra; People v Terra, 303 NY 332, 335, supra; McCormick, Evidence [2d ed], § 346, p 830 et seq.).
In the case before us, Garcia and Leyva each contend that minor inconsistencies in the stories told by some of the police witnesses should have operated as rebuttal though neither of them took the stand. Low, who did testify, raises this rebuttal issue even more extensively. He asserts that any testimony or evidence produced by a defendant which is directed toward negation of the presumption should serve to remove it from the jury altogether. We do not agree.
In order to evaluate Low’s claim, it is first necessary to detail his testimony. The police officers who made the arrest acted on a tip from an informer, who told them that a 1969 gold Chevrolet with Florida license plates, carrying drugs, would appear at the Brooklyn side of the Williamsburg Bridge at 4:00 p.m. on that same day. The informer’s call came at 2:00 p.m.. Going to the bridge, police found the car there at just about 4:00 p.m.; all three defendants were in it, Low driving. The drugs were under the front seat, their container visibly protruding.
According to Low, he had been working in Florida as a cook until the day before the arrest, when, he said, he had driven up from that State in a friend’s car. He did not explain what happened to the friend’s car, but said that, while on his way *168 to the bus terminal to go to New Jersey, he met a man named Cepero, whom he knew slightly from Florida. Cepero, Low stated, offered him a ride, but indicated that he had an errand to do first. Low testified that he agreed to the ride and the errand and drove, with Cepero, to a nearby hotel, where Cepero went inside. After a good while, Cepero returned with Leyva and Garcia and asked Low, as a favor, to drive the other two defendants to Brooklyn. Low testified that he did not know his precise destination in Brooklyn, but took directions from Leyva from time to time. He found himself arrested at the bridge exit.
Thus Low asked the jury to believe that, though he was arrested in a car bearing Florida license plates, he had no prior connection with that car, and that his trip to New York from Florida only the day before was pure coincidence. He also asked the jury to believe that, for no apparent reason, he consented, at the behest of a very casual acquaintance whom he had just chanced to encounter, to drive Garcia and Leyva to Brooklyn, a destination opposite to his own New Jersey-bound one. He offered no explanation as to why they could not have driven themselves. He further asked the jury to believe that Cepero had either failed entirely to provide for the driving of the car used to transport the large and very expensive quantity of cocaine here involved or had, on mere impulse, decided to entrust it to a near-stranger who was completely unaware of his undertaking. Moreover, he offered no explanation as to why he was, on the first day of his arrival after his long trek from Florida, willing to be so readily detoured by the offer of a ride that turned into four hours of waiting for Garcia and Leyva to appear at the hotel. Yet Low suggests that this testimony should have been sufficient to deny the prosecution the use of the presumption as a matter of law.
The purpose of the presumption was to prove the fact of possession, inferential though such proof may be.[3] As such, it *169 formed part of the support for the prosecution’s prima facie case. No less than with any other proof of facts offered by a prosecution, contrary evidence from a defendant does not negate the existence of a prima facie case; rather it presents an alternate set of facts, or inferences from facts, to the jury. The jury then has the right to choose between the two versions.
None of the defendants here disputed the fact that they were in the car, nor did they argue that drugs were not found in it. These were the two underlying facts which the statute requires be proved before the presumption applies. Once the prosecution had proved them, it was entitled to rely on the presumption as a part of its prima facie case. Defendant Low, by offering the jury additional facts not mentioned in the statute, in effect, asked the jury to draw a different inference, one more favorable to him than the one the statute authorizes. So described, the fact inferred under the presumption can be seen to be like any fact which is sought to be proved by circumstantial evidence (see Tot v United States, supra, at p 467).
It might be possible, of course, that a defendant’s evidence will prove the truth of his choice of inferences so conclusively that reasonable persons could no longer believe the inference authorized by the statute. There is nothing arcane about such a situation; where a defendant’s proof is conclusive and reasonable persons cannot disagree about the matter at issue, our courts always have the power to issue a trial order of dismissal (CPL 290.10) or direct the jury’s finding on an element of a crime. (See United States v Gainey, 380 US 63, 68, supra.)
In such a case, the fact that a jury is not given the opportunity to consider the inference authorized by the statute does not mean that the inference plays no role in the case. It merely means that, though the presumption suffices to enable the prosecution to make out a prima facie case, it is no longer sufficiently tenable to permit a jury, in the light of the *170 defendant’s evidence, to consider it. It receives the same treatment that any other "fact” so thoroughly controverted would receive.[4]
Clearly, Low’s story as he told it was not sufficient to achieve such a result. Reasonable persons could differ about whether his explanation for his presence in the car negated possession. Accordingly, given the presence of both defendant and drugs in the car, it was appropriate for the court to permit the jury to consider whether the statutory presumption of possession or Low’s explanation was the more credible and, if the former, whether it was so beyond a reasonable doubt. The same conclusion applies with even greater force to the jury’s consideration of whether the police officers’ testimony was so lacking in credibility as to undermine the factual support their testimony provided for the presumption. On the record here, the jury had a right to find that the inconsistencies in the officers’ testimony relied on by the defendants were trivial.
So applied, the presumption here is completely consonant with the constitutional requirement that the burden of proving guilt beyond a reasonable doubt stay with the People. When read as a whole, the charge of the trial court here, though it might have been phrased more tightly and precisely than it was, substantively made that clear. After detailing the statutory provisions,[5] the court expressly advised the jury, *171 among other things, that the presumption did not result "in a shifting of the burden at all”, that the presumption "is not a conclusion”, that, on the basis of a consideration of all the facts, the jury had a right to find that the "presumption fails” and, above all, that the burden of proof, remaining with the People, requires the establishment of guilt beyond a reasonable doubt. In sum, it conveyed the requisite permissiveness with respect to use of a presumption and, therefore, was acceptable. (United States v Gainey, 380 US 63, supra; United States v Baratta, 397 F2d 215, 226, cert den 393 US 939; United States v Gulley, 374 F2d 55.)
Defendants Leyva and Garcia contend additionally that the charge was erroneous because the court did not state explicitly to the jury that it could consider the credibility of the prosecution’s police witnesses in deciding whether the presumption had been rebutted or not. That is not necessary. So long as the court tells the jury that it may consider all the evidence it has heard, or all the evidence in the case, in evaluating the presumption, as the court did here, the requirements have been met (see United States v Gainey, supra, at p 70 and cases cited therein). The charge before us covered this point correctly.
We turn now to the demand for disclosure of the informer’s identity, which was denied both at a suppression hearing and at the trial itself. The information which led police to the gold Chevrolet and to these defendants was received by Detective Viera in the presence of several other police officers and an Assistant District Attorney. It came from a registered informer whose services had, in the past, proved reliable enough to have resulted in a number of drug convictions. On this occasion, he had described the car to the detective, noted that its contents would include drugs, provided its expected location and arrival time, and added that one of the defendants, Garcia, whom Detective Viera knew from past arrests, would be in the car. The informer also said that a second person, whose name he did not know but whose description he provided, would be in the car. The description did not fit Leyva or Low, and the informer did not mention either of them.
*172 At the suppression hearing, the court reviewed documentation and testimony substantiating the detective’s claim that the informer was registered and had supplied valuable tips in the past, and then denied disclosure.[6] On the facts here, we find no reason to overrule the affirmed determination that there was a sufficient showing of probable cause without disclosure of the informer made by the trial court in the exercise of its discretion. (McCray v Illinois, 386 US 300; People v Caputo, 41 AD2d 165, cert den 414 US 1135.) Further, there was no request for an in camera hearing (People v Darden, 34 NY2d 177).
The trial court was equally correct in denying disclosure of the informer’s identity. This informer did not set up a drug sale or participate in any way in the events which were the gravamen of the crime. He was not present at the arrest. Thus, he was in no position to give testimony bearing on the guilt or innocence of the defendants here. Under such circumstances, the informer privilege does not give way. (People v Pena, 37 NY2d 642; People v Goggins, 34 NY2d 163, 170, cert den 419 US 1012.)
Defendant Low argues that he was entitled to the identity of the informer so that he could avail himself of the latter’s testimony that Low was neither identified nor described as one of the persons who would be in the car that day. This argument is without merit, for that proof was already before the jury. Detective Viera had so testified, stating with some care that Low had not been named by the informer and did not fit the one description the informer gave. Since the testimony which Low sought from the informer was directed to a point already conceded by the prosecution, and since, as noted, the informer’s role here was such that he could have had no other exculpatory evidence to offer, confidentiality was properly maintained. (See United States v Ortega, 471 F2d 1350, 1357-1359; United States v Buss, 362 F2d 843, 844-845, cert den 385 US 923; United States v Coke, 339 F2d 183.)
For all the reasons stated, the orders of the Appellate Division should be affirmed.
*173 Chief Judge Breitel and Judges Jasen, Gabrielli, Jones, Wachtler and Cooke concur.
Orders affirmed.

. The section has since been amended to conform to the 1973 controlled drug legislation. (L 1973, chs 276, 278.)

. Indeed the unique and mobile nature of automobiles, and their role in drug traffic also serves to distinguish the case before us from the circumstances found in United States v Romano (382 US 136). Romano is further distinguishable in that it involved a statute aimed at those who possess or control the manufacturing process rather than at possession of an illegal substance such as drugs (cf. Leary v United States, 395 US 6, supra; Turner v United States, 396 US 398, supra) and in that it involved imputed possession of large stationary equipment rather than of small, easily transferrable packages. As the court’s cases in this area make clear, each presumption’s rationality must be judged within its own context.

. A statutory presumption is a deduction or an inference which the trier of fact may draw from facts found or otherwise established during the course of the trial (see Tot v United States, 319 US 463, supra; People v Cannon, 139 NY 32, 43; People v Hildebrandt, 308 NY 397). Legislatures have been somewhat loose in their use of the word "presumption” when an inference is clearly what is intended, thus leading to a good deal of unnecessary confusion. (See McCormick, Evidence [2d ed], § 346, pp 829-831; Note, Constitutionality of Rebuttable Statutory Presumptions, 55 Col L Rev 527, 528.) Permissible inferences, based on specified underlying facts which must first be proved before the inference may be drawn, should be distinguished carefully from *169 those rules of jurisprudence which operate simply to place the burden of proof (as an affirmative defense is placed upon a defendant) or which describe basic value judgments of our system (as the rule that defendants are to be "presumed” innocent until proven guilty or the "presumption” against suicide). (See McCormick, Evidence [2d ed], § 346; Begley v Prudential Ins. Co. of Amer., 1 NY 2d 530; cf. People v Silver, 33 NY2d 475.) It is only such rules, rather than statutorily authorized inferences, which carry a requirement that the jury be told that, if it finds the facts in doubt, it must follow the "presumption”.

. The proposed Federal Criminal Code (§ 103, subd [4], par [a]) provided that the issue of the existence of the presumed fact must be submitted to the jury unless the court is satisfied that the evidence as a whole clearly negatives the presumed fact. The American Law Institute Model Penal Code also utilizes this approach (§ 1.12, subd [5], par [a]; but cf. Tentative Draft No. 4, § 1.13, especially comments at pp 114-118). The Supreme Court version of the Federal Rules of Evidence provided that "When the presumed fact establishes guilt or is an element of the offense or negatives a defense, the judge may submit the question of guilt or of the existence of the presumed fact to the jury, if, but only if, a reasonable juror on the evidence as a whole, including the evidence of the basic facts, could find guilt or the presumed fact beyond a reasonable doubt.” (Proposed rule 303, subd [b]; 56 FRD 183, 212.) Our New York cases have followed this approach (see People v Adamkiewicz, 298 NY 176, 181; cf. People v Richetti, 302 NY 290, 298).

. The extent to which the statute ought to play a role in the charge itself is debated. While the Supreme Court has expressed a preference for underplaying its role where possible (see United States v Gainey, supra, at p 71, n 7), it has authorized charges which utilized the statute when its presumption was valid. (United States v Gainey, supra, at p 70, and cases cited there.) The proposed Federal Criminal Code (§ 103, subd [4], par [b]) would authorize the court to tell the jury that "the law regards the facts giving rise to the presumption as strong evidence of the fact presumed”. The Model Penal Code (§ 1.12, subd [5], par [b]) and the Supreme Court *171 version of the Federal Rules of Evidence (Proposed rule 303, subd [b]; 56 FRD 183, 212) would omit this language. On balance, we tend to agree with the latter, more conservative view, but we do not consider a reference to the statute or to the Legislature’s judgment in the context of the particular charge before us to have been prejudicial.

. At the same hearing, the court found probable cause for the warrantless search of the automobile in view of the exigent circumstances arising out of the short interval between receipt of the information and the time at which the car was due at the bridge. We find no reason to disturb this now affirmed finding of fact. (See Carroll v United States, 267 US 132, supra; Brinegar v United States, 338 US 160, supra; People v Kreichman, 37 NY2d 693.)