Frank A. LOPEZ, as next of friend, attorney for and in behalf of Carmen GARCIA, Petitioner,

v.

Phyllis CURRY, Correctional Superintendent, Bedford Hills Correctional Facility, Bedford Hills, New York, or anyone having custody and/or control of Carmen Garcia, Respondent.

No. 78 Civ. 653.

United States District Court, S. D. New York.

June 26, 1978.

Frank A. Lopez, New York City, for petitioner.

Louis Lefkowitz, Atty. Gen., New York City by Mark C. Rutzick, Asst. Atty. Gen., for respondent.

## MEMORANDUM DECISION

### STEWART, District Judge:

This petition for a writ of habeas corpus is brought by Frank A. Lopez as attorney and next friend of Carmen Garcia, a state prisoner presently serving a term of fifteen years to life and a concurrent term of three years after being convicted of criminal possession of a dangerous drug in the first and fourth degrees (simple possession and possession with intent to sell)[1] after a joint jury trial with two other defendants in New York Supreme Court, Kings County. At trial the prosecution relied extensively on N.Y. Penal Law § 220.25(1)[2] which provides:

> The presence of a controlled substance in an automobile, other than a public omnibus, is presumptive evidence of knowing possession thereof by each and every person in the automobile at the time such controlled substance was found . . . [3]

Petitioner maintains that § 220.25(1) is unconstitutional, because the logical connection drawn by the statute between presence in the vehicle and knowing possession of drugs found in the vehicle is too arbitrary to survive constitutional scrutiny under tests set forth in *Leary v. United States,* 396 U.S. 6, 36, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969) and *Allen v. County Court, Ulster County,* 568 F.2d 998, 1006 (2d Cir. 1977). Petitioner further argues that the trial judge's jury instructions on the statutory presumption violated due process by impermissibly shifting the burden of proof to the defendants.

### I.

Petitioner has fully exhausted her state remedies as required by 28 U.S.C. § 2254. The federal constitutional claims she now presses were raised at trial and again on appeal; the New York Court of Appeals in its opinion in *People v. Leyva,* 38 N.Y.2d 160, 379 N.Y.S.2d 30, 341 N.E.2d 546 (1975), upheld the constitutionality of the statute, 379 N.Y.S.2d at 35, 341 N.E.2d at 550, and approved (although not without reservations) the trial judge's charge to the jury, 379 N.Y.S.2d at 39, 341 N.E.2d at 553.

Respondent urges, however, that where the State's highest court has upheld an assertedly unconstitutional statute, petitioner's failure to appeal to the United States Supreme Court, pursuant to 28 U.S.C. § 1257(2), constitutes a waiver of that constitutional claim,[4] precluding collateral review by a federal district court on a petition for habeas corpus.[5] The effect of

---

1. Under then N.Y. Penal Law § 220.15 and § 220.23.

2. In 1973 the phrase "controlled substance" was substituted for the previous language, "dangerous drug" L.1973, c. 276, § 20, c. 278 § 9. "Dangerous drug" was defined to mean any "narcotic drug, depressant or stimulant drug, or hallucinogenic" § 220.00. "Controlled substance" has substantially the same scope except excludes marihuana.

3. § 220.25 provides specific exceptions which apply
   (a) to a duly licensed operator of an automobile who is at the time operating it for hire in the lawful and proper pursuit of his trade, or
   (b) to any person in the automobile if one of them, having obtained the drug and not being under duress, is authorized to possess it and such drug is in the same container as when

he received possession thereof, or (c) when the drug is concealed upon the person of one of the occupants.

4. It is unclear whether respondent presses this argument with respect to the claim that the judge's charge contained constitutional error, a matter subject only to discretionary review on a writ of certiorari, 28 U.S.C. § 1257(3).

5. Respondent suggests that the Supreme Court's restrictive attitude towards deliberate bypass of state remedies, as recently expressed in *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), together with considerations of finality, judicial economy and avoidance of forum-shopping, mandate the result she seeks. However, the federal claims here have been presented to New York's trial and appellate courts, which have had a full opportunity to pass on the validity of the

the retroactive application of a waiver doctrine such as respondent proposes would be to deny this petitioner a federal determination of her constitutional claims which it was Congress' purpose in enacting the habeas corpus statute to guarantee.[6] We do not agree that such a "forfeiture of federal relief" is required under the circumstances, see Allen v. County Court, Ulster County, supra, 568 F.2d at 1004, and hold therefore that the petition is properly before us.

## II.

The government's case against Carmen Garcia, as revealed by the evidence at trial, was simple. Garcia and her two co-defendants were arrested in September, 1971, when the car in which they were riding was intercepted by four New York City detectives and an Assistant District Attorney near the Williamsburgh Bridge in Brooklyn.[7] The driver was Jose Low; Widelto Leyva and petitioner Carmen Garcia (whom the officers recognized) were front seat passengers. Beneath the front seat, in plain view as the officers approached the vehicle, was a brown manila envelope, which proved to contain approximately one kilogram of a substance containing cocaine.

The People's case consisted of the testimony of the four detectives and the Assistant District Attorney to the effect that, when the car was intercepted, Garcia was in the car and narcotics were found in the car (a chemist also testified that the substance found in the car was cocaine).

Neither petitioner nor her co-defendant Leyva testified or offered any evidence at the trial. Defendant Low took the stand, however, portraying himself as an innocent dupe obliging an acquaintance by driving two strangers to Brooklyn in a borrowed car.

To fill the crucial gap in its prima facie case—knowing possession by petitioner of the contents of the manila envelope—the prosecution relied on N.Y. Penal Law § 220.25(1).

## III.

In Allen, supra, the Court of Appeals held unconstitutional a New York statute, N.Y. Penal Law § 265.15(3), which is substantially similar to the statute here in issue. It provides:

3. The presence in an automobile . . . of any firearm . . . is presumptive evidence of its possession by all persons occupying such automobile at the time such weapon . . . is found, . . .

We think the Court of Appeals' decision in Allen clearly suggests, if not compels, our

---

state's statutory presumption, and thus the concerns of comity and federalism underlying Wainwright v. Sykes are not implicated in the present case. Allen v. County Court, Ulster County, supra, 568 F.2d at 1004. Finality, a value inherently at odds with the very purpose of federal habeas review, is entitled to no controlling weight here. Nor can we accept respondent's forum-shopping argument that federal district courts consistently reach results divergent from controlling Supreme Court authority on constitutional matters. Also, judicial economy is not served by a reduction of the habeas docket of the lower federal courts at the expense of adding to the workload of the Supreme Court.

6. Here the time in which petitioner might appeal to the Supreme Court is past. We express no opinion on whether a federal district court may in its discretion require a petitioner in appropriate circumstances to exhaust the remedies of certiorari or direct appeal to the Supreme Court where they are still available, see

United States ex rel Bland v. Nenna, 282 F.Supp. 754, 756 (S.D.N.Y.1968); United States ex rel Stevens v. McCloskey, 239 F.Supp. 419, 422–23 (S.D.N.Y.1965), although in light of the considerations discussed supra, n.5 we think such circumstances would be rare.

7. The officers were acting on a telephone tip. At a pre-trial suppression hearing they stated that a reliable informant had notified the District Attorney's office on the afternoon of the arrest that at 4:00 P.M. a gold 1969 Chevrolet bearing Florida license plates would be at the Brooklyn side of the bridge, that Carmen Garcia and another man would be in the car, and that they would find a kilo of cocaine in a brown manila envelope. Details of the arrest and subsequent investigation confirmed the basic accuracy of the information, but the informant did not take the stand, and the jury was informed neither of his existence nor of the content of his tip.

conclusion that the drug statute before us in this case is also unconstitutional.[8] There must be, the Court emphasized in *Allen,* a substantial relation, a rational connection, between the fact giving rise to the presumption and the presumed fact. A legislative assertion that such a relationship exists is not sufficient; rather, a court must be satisfied from established facts "of a presumption's empirical validity" (568 F.2d at 1006). The Court of Appeals found, however, no basis "in logic or experience" for the presumption (568 F.2d at 1007).

Relying upon a series of Supreme Court cases, *Tot v. United States,* 319 U.S. 463, 63 S.Ct. 1241, 87 L.Ed. 1519 (1943); *United States v. Gainey,* 380 U.S. 63, 85 S.Ct. 754, 13 L.Ed.2d 658 (1965); *United States v. Romano,* 382 U.S. 136, 86 S.Ct. 279, 15 L.Ed.2d 210 (1965); *Leary v. United States,* 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969); *Turner v. United States,* 396 U.S. 398, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970); and *Barnes v. United States,* 412 U.S. 837, 93 S.Ct. 2357, 37 L.Ed.2d 380 (1973), the Court concluded (568 F.2d at 1009):

> For these reasons we hold that, because it cannot be said with substantial assurance that the presumed fact (possession of a gun by occupants of an automobile) is more likely than not to flow from the proven fact (presence of the gun in the car) the New York presumption making the latter "presumptive evidence" of the former is unconstitutional on its face.

We think the circumstances here lead inevitably to the same result. Indeed, the words "dangerous drug" or "controlled substance" can be substituted for "gun" in the second full paragraph of page 1007 of *Allen* without disturbing in any way its substance or its application to this case.

In footnote 18 (568 F.2d at 1008), the *Allen* court suggests that this case may be distinguishable from *Allen* in that "the *Leyva* court had before it a report indicating that the New York legislature may have actually found the connection required by

*Leary. See* 38 N.Y.2d at 166–67, 379 N.Y. S.2d 30, 341 N.E.2d 546." This report is the 1972 Interim Report of the Temporary State Commission to Evaluate the Drug Laws, N.Y. Legislative Documents, 1972, No. 10. We find nothing in this report to suggest that the legislature made the kind of inquiry required by *Leary.* On page 69, the report states:

> The purpose of this section, as related to us by prosecutors and police officers, is to meet the situation where a quantity of dangerous drug is found either on the floor or secreted in a vehicle which has been stopped and searched for some lawful reason. In such a situation, where actual possession can be directly attributed to none of the occupants, they state the presumption is necessary in order to secure conviction; without it possession by any occupant could not be proven. It is asserted that the potential danger of presuming possession on the part of all occupants is offset by the fact that with the presumption either the guilty party will exonerate the innocent occupants or the innocent occupants will identify the guilty party. It is also stated that prosecutorial discretion and the trier of fact (judge or jury) would prevent prosecution or conviction where the charge involves a minimal quantity of drug. (Page 69).

This language is strikingly reminiscent of the language from the New York Court of Appeals' decision which the *Allen* court quoted and found unpersuasive (568 F.2d at 1008). Nor is there any indication in the report that the Temporary Commission considered any factual data to support its conclusion (at page 69), that the presumption is "rational and logical" other than the assertions of "prosecutors and police officers". Apart from the text of the report at pages 69–70 the only other support for the presumption which we have found appears in the summary of testimony taken at various hearings, as follows:

This case was decided prior to the *Allen* decision.

---

**8.** In a related case involving defendant Low, the statute was held constitutional, *Leyva v. Superintendent,* 428 F.Supp. 1 (E.D.N.Y.1977).

At page 120, the Chairman of the New York State Investigation Commission testified, according to the summary, that he "approved the presumption that all passengers in an automobile are guilty when a substance is found in the automobile. Judges have a tendency to require more evidence anyway and people together in an automobile are more likely to be cohorts than people together in a room."

At page 122, an Assistant District Attorney is reported as having "stated that existing § 220.25 . . . was a good provision but should include all dangerous drugs. When a substance is hidden in the trunk of an automobile, it may be difficult to presume all passengers possessed it. In such a case, perhaps the presumption should apply only if a felony weight is hidden."

At page 125, another Assistant District Attorney reportedly said that he "believes the presumption should be continued but that accessibility of any dangerous drug should be the basis for the presumption. He stated that the present practice in using the presumption is to charge all of the passengers and then attempt to get a confession from one of them."

Finally, at page 126, two Narcotics Bureau police sergeants are reported as testifying that: "they favor continuing the automobile presumption. They approve, however, of the concept of accessibility of the substance as a requirement of applying the presumption."

These comments do not persuade us that the *Leary* test has been met by the legislature. Granted that it may be difficult to conduct a factual study which would throw light on the question whether it is more likely than not that the fact of possession flows from the fact of presence, nevertheless some more searching consideration of the question could surely be made.

The report, in fact, recommends a stricter test than that adopted by the legislature. Immediately after the section of the report which is quoted in *Leyva*, 38 N.Y.2d at 166–67, 379 N.Y.S.2d 30, 341 N.E.2d 546, is the following:

We cannot, however, by the same logic justify the presumption as it would apply to small quantities of dangerous drug which may be possessed for personal use. While occupants of a vehicle may in some instances be aware of the fact that another occupant possesses dangerous drugs, there is little in the nature of the offender's possession which logically leads to the conclusion that others in the vehicle are aware of or, (more significantly), culpably involved in the offender's possession. The presumption of possession by all is even more strained when viewed in conjunction with the provision which excludes application of the presumption if the drug is "concealed upon the person of one of the occupants". If, as we have often been told, drug possessors jettison their goods upon the approach of the police, then the secreting or dropping of the drug will suddenly and fortuitously implicate the other passengers in the possessor's offense.

Although there may be some social utility in continuing the presumption with respect to misdemeanor amounts in that it may induce innocent occupants to identify the true owner (if he is known), we find that there is a counter-balancing social disutility in that it creates a high risk of criminal charges being preferred and prosecuted against innocent individuals. Accordingly, the Commission recommends that the statutory presumption be continued, but that it be restricted in its application to instances where the quantity of drug is of felony weight. (Pages 69–70).

The Temporary Commission's recommendation was not accepted and the statute contains no quantity reservation or any other limitations. In this connection, the *Allen* court postulated in footnote 18 a second distinction: "the *Leyva* court adopted that report's suggestion that anyone transporting large quantities of drugs would be very unlikely to allow a person not in joint possession to accompany him." However, the court subsequently (568 F.2d at 1010) concluded that

. . . . it would be inappropriate for us in effect to determine whether a more narrowly drawn New York presumption, limited to a more restricted class of cases than that delineated by the state legislature, might be upheld and, if so, whether the present case would fall inside or outside of the more confined area.

In light of this observation, we do not find anything in the footnote which precludes us from concluding that the drug statute (which is unlimited in scope as to quantity) is unconstitutional.

The Court of Appeals considered whether to limit its opinion to "an 'as applied' holding" (568 F.2d 1009-10) and concluded that this was inadvisable. It cited in this connection *United States v. Gonzalez*, 442 F.2d 698 (2d Cir.) (en *banc*), cert. denied, sub nom. *Ovalle v. United States*, 404 U.S. 845, 92 S.Ct. 146, 30 L.Ed.2d 81 (1971). There, the issue was whether knowledge of illegal importation could be presumed under 21 U.S.C. § 174 (repealed in 1970, Pub.L. 91–513, 84 Stat. 1291), from possession of slightly more than one kilogram of cocaine. Ample statistics and other data were available to the Court on the extent of illegal importation of narcotics. The *Allen* court noted that, as in *Gonzalez*, an "as applied" holding is appropriate where "the empirical connection between the proved and presumed facts turns on the presence or absence of one or two clearly identifiable circumstances which were left unmentioned by the legislature, e. g., the type and amount of a drug possessed by a defendant" (page 562). But in *Allen* the Court found it inappropriate so to limit its opinion because the empirical relationship presented to it turned "on a variety of circumstances and on the largely unpredictable combinations in which they occur" (568 F.2d at 1010). We think that the considerations which influenced the Court in *Allen* are equally applicable here.

### IV.

However, in order to make a complete record of our views on petitioner's contentions, we also consider the petitioner's second position, that is, that the trial court's charge on the presumption violated due process by shifting the burden of proof to the defendant. We agree with petitioner that the charge was improper.

The Court on a number of occasions properly charged the jury as to the People's burden of proof (Tr. 1179, 1181, 1187, 1234–35, 1240–41). But we think the effect of this instruction was submerged by the Court's instructions on the presumption. The jury, for example, was instructed:

Now, the presence of a dangerous drug in an automobile is presumptive evidence of the possession of that drug by all, each and every person in the automobile at the time that the drug is found there.

To put it another way, upon proof of the presence of the cocaine in the vehicle, and further upon proof that these three defendants were in the car with the cocaine at the time of the arrest, the Penal Law says in effect that from this evidence, each of the defendants in the automobile possessed the cocaine, knowingly possessed the cocaine.

This presumption has been created by statute specifically to aid the People who have the burden of proving guilt beyond a reasonable doubt. Now, the presumption can be overcome by any one or all of the defendants who come forward with sufficient evidence to rebut the presumption. (Tr. 1178–79.)

\*    \*    \*    \*    \*    \*

. . . However, if you find that the People have proven beyond a reasonable doubt, that there was cocaine and sixteen ounces of it in the car, and that the defendants were in the car with that cocaine at the time they were arrested, then the People are entitled to this presumptive evidence that each of the defendants knowingly possessed the full amount of the contraband.

In other words, what we are talking about now, is whether or not the People are entitled to the benefit of this presumption. And if they established it to your staisfaction [sic] the cocaine was in the car, the people were in the car at the

time of the arrest, he's entitled to the presumption. He's entitled to the presumption which goes to their knowing of the presence of that stuff in the car, and therefore charging them with possession.

In that event, you're still not to the point of a verdict. In that event, you will search all of the remaining testimony to assess whether the defendants now, have produced sufficient evidence to overcome the legal presumption of knowledgeable possession.

Now I charge you that it need not be testimony from the defendants themselves, although we have heard from the defendant Low in his own behalf. This testimony can come from other witnesses called by the defense. In this case there were not, but it's a possibility, or, it can come from the testimony elicited on cross examination by the defendants of the People's own witnesses.

I further charge you that the defendants' testimony to overcome this presumption, this statutory presumption, must be substantial. It must be such as to create a reasonable doubt in your minds that the defendants knowingly possessed this cocaine. (Tr. 1181–82.)

The court also limited the evidence which the jury could consider, as follows:

Now, that is just the presumption. It is rebuttable. It is rebuttable in the—anyone of the ways that I suggested in my major talk to you today in what we call the charge to the jury.

It is rebuttable by the defendants calling attention to some evidence in the case, either by cross examination of the witnesses of the people, or by one of the defendants taking the stand, or by a third method which wasn't used in this case, the first two were, Mr. Sonenshine, Mr. Markowitz and Mr. Ellison, certainly cross examined the witnesses on all pertinent points and one of the defendants took the stand and, the other method which might have been available to them call in somebody else apparently was not going to be helpful in this case, so it wasn't used. (Tr. 1240–41; see also Tr. 1235.)

This charge was given during the jury's deliberations in response to a request from the jury for clarification of the presumption (Tr. 1238).

■ We think that, viewed in totality, the charge clearly "had the potential for misleading the jury with respect to the requirement that the government must prove every element of an offense beyond a reasonable doubt". *United States v. Robinson*, 545 F.2d 301, 306 (2d Cir. 1976). There is a substantial likelihood that jurors who heard these instructions came away with the belief that to avoid a statutorily-mandated finding that petitioner possessed the drugs, not only did she have to present evidence controverting her knowledge or possession, but such evidence had to be "sufficient" to "overcome" the presumption, and the test of sufficiency was whether the evidence was "substantial". At the least, the jury may well have obtained a clear impression that some specific, if undefined, standard of persuasiveness had to be met before the inference of possession could be dismissed. The actual standard of "sufficiency" imposed is immaterial; the fact that petitioner had to carry *some* burden of persuasion on an essential element of the offense is enough to offend due process. *Mullaney v. Wilbur*, 421 U.S. 684, 701, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975); *Smith v. Smith*, 454 F.2d 572, 577–79 (5th Cir. 1971). Although the judge described the operation of the statute to the jury in concrete procedural terms, his instructions on the reasonable doubt standard took the form of a general maxim; the two were never reconciled. As was held in *United States v. Robinson, supra,*

Viewing the instructions as a whole, we find little that might have served to cure the error or to insure that the jury was not misled. The instructions on the burden of proof were general in nature, while the [instructions on the statutory inference were] specific. We cannot conclude that the jury ignored the specific, erroneous instructions. (545 F.2d at 306.)

Respondent contends, that, even if the judge's charge were held to contain error, in light of the independent circumstantial evidence of petitioner's possession of the drugs the error was harmless. *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *Stubbs v. Smith*, 533 F.2d 64, 71 (2d Cir. 1976). We do not agree. The circumstantial evidence to which respondent directs our attention—the quantity of cocaine, the location of the manila envelope near petitioner in the car and the testimony by defendant Low tending to show defendants Garcia and Leyva acting in concert—is by no means so overwhelming that we can disregard the possibility that the jury utilized the improperly charged statutory inference. This case presents a different situation, therefore from the facts in *Schneble v. Florida*, 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972) where the improperly admitted evidence "at most tended to corroborate" the "overwhelming" independent evidence of guilt, 405 U.S. at 431, 92 S.Ct. 1056; since there was no "reasonable possibility that the improperly admitted evidence contributed to the conviction" 405 U.S. at 432, 92 S.Ct. at 1060, the court found no cause for reversal. To similar effect, *see Harrington v. California*, 395 U.S. 250, 254, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); *United States ex rel Ross v. LaVallee*, 448 F.2d 552, 554 (2d Cir. 1971). Here, however, we can express no such confidence.

Nor is this a case where the jury by its verdict demonstrated to a certainty that its finding of possession had a basis wholly independent from the statutory inference. In *Stubbs v. Smith*, 533 F.2d 64 (2d Cir. 1976) (a habeas corpus petition challenging the constitutionality of the "gun presumption" later struck down in *Allen v. County Court, Ulster County, supra* ), the Court of Appeals held that regardless of the constitutional propriety of the presumption its use in that case was harmless error. The most significant basis for that finding for our purposes was that, in addition to convicting petitioner of illegal possession of a gun, it also found him guilty of assault with a dangerous weapon (in a contemporaneous incident). Since the assault conviction necessarily comprehended possession of the weapon, and since the facts surrounding the assault were wholly unrelated to the evidence which supported the statutory inference, it was plain that the jury had a logically independent basis for finding possession of the weapon, with or without the statute.

Absent the logical certainty presented by the verdict in *Stubbs*, we cannot declare a belief beyond a reasonable doubt that the jury did not rely on the erroneous instructions on the statutory inference and the government's burden of proof in its deliberations; thus we cannot say that the defects in the charge were harmless error. *Chapman v. California, supra*, 386 U.S. at 24, 87 S.Ct. 824.

In *Wright v. Smith*, 569 F.2d 1188 (2d Cir. 1978), the Court of Appeals for the Second Circuit considered the propriety of a writ of habeas corpus granted on the ground that the state trial court's jury charge with respect to petitioner's alibi defense had unconstitutionally shifted the burden of proof to him on that issue, denying him due process. The Second Circuit reversed on the ground that the flaws in the charge did not reach a constitutional level warranting issuance of a writ of habeas corpus. In *Wright*, however, a serious flaw in petitioner's case was his failure at the time of the trial either to submit a proposed alibi charge or to object to the instruction which was given. 569 F.2d at 1192. *See Henderson v. Kibbe*, 431 U.S. 145, 154, 97 S.Ct. 1730, 52 L.Ed.2d 203 (1977). In the present case, petitioner and her co-defendants joined in vigorous objections to the defective portions of the trial judge's charge, and proposed specific instructions which would have cured the defects. And unlike the situation in *Wright*, where defense counsel sought and obtained a supplemental clarifying instruction which was apparently to his satisfaction, 569 F.2d at 1193, here the trial judge's supplemental charge did nothing to meet petitioner's objections, which were again renewed; the court was further alerted by the jury's requests for reinstruc-

tion that these important issues were in need of clarification.

The instructions in the present case, to which repeated objections were unsuccessfully made and which explicitly declared that petitioner had to "overcome" the presumption by evidence which was "sufficient" or else the presumption would "stand", present a much stronger case for habeas relief. Finally, we think that the trial judge's instructions in *Wright* on the government's burden of proof beyond a reasonable doubt were more comprehensive, more focussed and more effective in curing any implied shift of the burden of proof which may have occurred in that case than were the "reasonable doubt" instructions given in the present case. 569 F.2d at 1193, n. 3.

Accordingly, we conclude that the statute is unconstitutional. We also conclude that the charge unconstitutionally applied the statute.

The writ is granted.

SO ORDERED.