1 Parcel 1 in this case
2 Parcel 2 in this case
3 The Amtrak station
4 The Landover station
5 (Off the map)  The Cheverly station

PC  The Penn Central, Amtrak, Conrail tracks.  The Metro tracks now run immediately southeast of those tracks.  The New Carrolton station is in the northwestern portion of the subject properties, Nos. 1 and 2 above.

A  Cobbs Road (no connection with Beltway)
B  John  Hanson Highway, US Route 50 (dual)
C  Capital Beltway, I-495 (dual)
D  Ardmore Ardwick Road
E  George Palmer Highway, Md.704
F  Landover Road
G  Pennay Drive

Juris G. **CEDERBAUMS, as next of friend, attorney for and in behalf of Fernando Martinez, Petitioner,**

v.

David **HARRIS, Superintendent, Greenhaven Correctional Facility, Respondent.**

No. 79 Civ. 330 (CHT).

United States District Court, S. D. New York.

July 20, 1979.

Juris G. Cederbaums, pro se.

Robert Abrams, Atty. Gen. of the State of New York, New York City, for respondent; Stephen M. Jacoby, Asst. Atty. Gen., New York City, of counsel.

## OPINION

TENNEY, District Judge.

Fernando Martinez, currently a prisoner of New York State serving a sentence of 15 years to life on a drug possession conviction, petitions this Court for a writ of habeas corpus. 28 U.S.C. § 2254. Martinez asserts deprivation of due process in two regards. First, he states that the presumption contained in New York Penal Law § 220.25, i. e., that except in certain situations all occupants of a motor vehicle are presumed to have knowing possession of drugs found therein, is unconstitutional on its face and as it was applied to him at his trial. Second, Martinez insists that he is entitled to release from custody because he was promised release as the quid pro quo for his cooperation with the office of the United States Attorney for the Eastern District of New York in an investigation that led to the successful prosecution of corrupt members of the New York Police Department. Because the Court finds no merit to either contention, the writ is denied.

*New York's "Knowing Possession" Statute*

New York Penal Law § 220.25 provides in pertinent part that "[t]he presence of a dangerous drug in an automobile, other than a public omnibus, is presumptive evidence of knowing possession thereof by each and every person in the automobile at the time such drug was found." Certain situations not here germane are excepted from the presumption, which has been held to be constitutional on its face by both the United States Court of Appeals for the Second Circuit and the New York Court of Appeals. *Lopez (Garcia) v. Curry*, 583 F.2d 1188 (2d Cir. 1978); *People v. Leyva*, 38 N.Y.2d 160, 379 N.Y.S.2d 30, 341 N.E.2d 546 (1975). However, in *Lopez (Garcia)*, the Second Circuit found that the presumption had been unconstitutionally applied where the trial judge instructed the jury that if the foundation for the presumption was laid, the state was "entitled to the presumption . . . charging [the defendants] with possession," and that the presumption required the defendants to come forward with evidence that would "raise a reasonable doubt in your minds that the defendants possessed this cocaine." 583 F.2d at 1192 (citation omitted). This instruction, said the federal court, "clearly shifted the bur-

den of proof on the element of knowing possession. This was error—and of manifest constitutional dimension." *Id.*

Despite Martinez' contention otherwise, no such burden shift occurred at his trial before Justice Max Bloom of the New York State Supreme Court. Justice Bloom instructed the jury on the four elements which "must be established by the People in order to sustain a conviction for criminal possession of a dangerous drug in the first degree. First and foremost, it must be established that there was possession of a narcotic drug specified in the statute." Trial Transcript at 1357. Justice Bloom then quoted section 220.25, and went on:

> This presumption of possession of a dangerous drug present in an automobile by all the occupants of the auto is nothing more than an inference of fact mandated by law because it coincides with the general experience of society. The presumption is not conclusive. It may be rebutted and rebuttal may be direct or it may be inferred from all the facts disclosed by the evidence.

*Id.* at 1359. Martinez claims that the words "mandated" and "rebuttal" compelled the jury to employ the presumption and then shifted the onus to Martinez to dispel it. However, those words were not spoken in a vacuum. A fair reading of Justice Bloom's very next remarks demonstrates that Martinez is simply wrong, for the instruction continued:

> It is for you, as triers of the fact, to say whether or not the circumstances disclosed by the evidence are such as to make the presumption of knowing posses-

sion applicable. If you find that they are, it is for you to determine whether or not that presumption has been rebutted. *Id.* This careful emphasis on the jury's right and duty ab initio to determine whether the presumption of knowing possession arose at all, and the initial emphasis on the burden of the prosecution to prove guilt in all respects [1] compel the conclusion that the jury charge was eminently fair.

### Martinez' Cooperation with Federal Authorities [2]

■ Four years after Martinez' conviction and incarceration on the drug charges, he was asked by the United States Attorney for the Eastern District of New York to cooperate in an investigation of corruption in the New York City Police Department, a matter unrelated to the crime for which Martinez was imprisoned. Martinez agreed to cooperate and did so for 13 months. However, he maintains now that before agreeing to help federal law officials he got from two Assistant Attorneys ("AUSA") promises . . . to the effect that they would intercede with the state authorities to obtain his release from prison." Petition ¶ 14. Indeed, AUSA Peter Schlam wrote two letters in Martinez' behalf.[3] *See* Exhs. 7 & 9 to Petition. These letters acknowledge Martinez' cooperation, but apparently not as fully or as glowingly as Martinez would wish. He refers to the letters as "curt" and notes that they are only one paragraph long, implying that they are merely tokens of the assistance that he was promised and quite unlikely to sway New York parole authorities. However, the en-

---

1. From the evidence adduced at trial it seems that the presumption of drug ownership by the auto passenger, Martinez, was actually unnecessary to the prosecution's case on possession. Martinez was arrested after the police stopped the car he was riding in for passing a red light. While one officer checked the driver (codefendant Roland Bell), a second officer walked to the passenger side where Martinez was sitting. The officer testified that he spotted a plastic bag of white powder in Martinez' hands, and that Martinez tried to hide the bag under his feet. Trial Transcript at 148.

   In the face of this direct testimony it is surely possible that the jury could have reasonably found possession by Martinez without the aid of the section 220.25 presumption.

2. This is apparently the major string to Martinez' bow; his supporting Memorandum of Law argues this point only and states that it leaves the claims in connection with the presumption statute to the position expressed in the Petition.

3. These letters have been submitted as supporting documents to a commutation petition currently awaiting disposition by Governor Hugh Carey of New York. Petition ¶ 19.

thusiasm, vel non, of the letters written for Martinez' benefit is simply beside the point, for whatever Martinez' role in assisting law enforcement, whatever the nature of the promises—if any—made to him by federal officials and how those promises were fulfilled, and whatever the particular equities of his position, respondent is correct in asserting that Martinez simply cannot prevail by way of habeas corpus.[4]

■ Admittedly, habeas corpus is the sole federal remedy "when a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment." *Preiser v. Rodriguez,* 411 U.S. 475, 500, 93 S.ct. 1827, 1841, 36 L.Ed.2d 436 (1973). However, it is clear that the phrase "the very fact or duration of his physical imprisonment" refers only to the events that brought that defendant to the custody of the sovereign and to the duration of the sentence imposed on the conditions then existing—not to the manner in which the penal authorities structure the custody, or to the events which arise as it continues, or to the possibility that equity or charity might intervene to modify its terms or duration.

■ This Court knows of no case in which the bounds of the writ have been extended beyond consideration of the circumstances surrounding the imposition of a particular punishment on a particular individual. It follows, then, that habeas will lie to call to account prosecutors who have made unfulfilled or even unfulfillable promises in exchange for a guilty plea. *Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971); *Palermo v. Warden,* 545 F.2d 286 (2d Cir. 1976). Such pleas, no less than guilty verdicts after trial, trigger the surrender of the defendant to the will of the state, and that surrender cannot be procured by deception, or in bad faith, or without due process of law. However, no matter how hard Martinez struggles to bring his situation within the compass of plea bargain cases like *Santobello* and *Palermo,* there was here no new surrender of person or guaranteed rights. Cooperation with the law entirely disassociated in time from a fair and constitutionally correct trial and sentence in no way revives for reassessment the original bargain struck by a defendant and the sovereign at the time of plea, whether the defendant then took a measure of leniency in return for a guilty plea, or, as here, pleaded not guilty and risked the imposition of heavier penalties in return for the possibility of acquittal.

4. The respondent also makes the point that a United States Attorney would have no authority to bind a state to release a state prisoner. That appears to be correct. Although the topic has not been widely addressed, the United States Court of Appeals for the Seventh Circuit refused to hold the federal government to an agreement between an Illinois prosecutor and a defendant "when no agency relationship in fact exists [between state prosecutor and federal government] and the Government has no actual knowledge of the agreement." *United States v. Long,* 511 F.2d 878, 882 (7th Cir. 1975).

In *Palermo v. Warden,* 545 F.2d 286 (2d Cir. 1976), the court reviewed cases enforcing promises, e. g., of specific sentencing, where sentencing was entirely in the discretion of the court; of immunity from federal prosecution in another district made by the federal prosecutor in the first jurisdiction; of parole after three years imprisonment made by the United States Department of Justice in usurpation of parole board authority, *id.* at 296, and concluded on its own facts that the promise by a district attorney of one jurisdiction to obtain parole for the defendant on a sentencing to occur in another jurisdiction in the same state was enforceable in the second jurisdiction. *See also Chaipis v. State Liquor Authority,* 44 N.Y.2d 57, 404 N.Y. S.2d 76, 375 N.E.2d 32 (1978) (where state promised in return for cooperation in corruption investigation and guilty plea on charge of permitting prostitution that a favorable report would be made to State Liquor Authority with view to preserving defendant's liquor license, State Liquor Authority instructed to reconsider revocation of license in view of services rendered state by defendant).

No court has ever held that the promise made by an official of one sovereign is binding upon another sovereign absent an agency relationship. *See, e. g., United States v. Padilla,* 589 F.2d 481, 484 (10th Cir. 1978). More significant for our purpose is the fact that every case in which a promise has been enforced involved a contemporaneous plea bargaining situation where the defendant had not yet been sentenced on some offense, and where he had given up some constitutionally protected right in order to fulfill his end of the bargain.

Martinez had his bargain with New York, which tried him and bore the burden of proving his guilt beyond a reasonable doubt. The "fact" of his incarceration was settled years before his cooperation with federal authorities, and control of its duration has passed from judicial to executive institutions. The Court simply does not have jurisdiction over this claim of broken promise or contract; the proper avenue for Martinez is by petition for commutation to the executive branch, an approach he is wisely pursuing. See n. 3 supra.

For all of the foregoing reasons, the petition for writ of habeas corpus is denied.

So ordered.