[17 NE3d 1121, 993 NYS2d 525]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v OLI-
VERIO GALINDO, Appellant.

Argued June 3, 2014; decided June 26, 2014

720

## POINTS OF COUNSEL

*Robert S. Dean, Center for Appellate Litigation,* New York City (*Marisa K. Cabrera* of counsel), for appellant. I. The verdict convicting Mr. Oliverio Galindo of second-degree possession of a weapon with unlawful intent was legally insufficient where intent could only be established through the permissive presumption of Penal Law § 265.15 (4) and was rebutted by the prosecution's own evidence and theory of an "accidental" shooting. (*Jackson v Virginia,* 443 US 307; *People v Contes,* 60 NY2d 620; *People v Schulz,* 4 NY3d 521; *Sullivan v Louisiana,* 508 US 275; *People v Leyva,* 38 NY2d 160; *Matter of Raquel M.,* 99 NY2d 92; *County Court of Ulster Cty. v Allen,* 442 US 140; *People v Rosano,* 50 NY2d 1013; *Carella v California,* 491 US 263.) II. Mr. Oliverio Galindo was denied effective assistance of counsel when trial counsel failed to move for dismissal as to the other top count of the indictment, possession of a weapon outside of home and place of business, on the only viable and obvious legal argument: that the prosecution failed to prove one of the elements of the offense—Mr. Galindo's possession of the gun outside of his home. (*People v Rodriguez,* 68 NY2d 674; *Strickland v Washington,* 466 US 668; *People v Benevento,* 91 NY2d 708; *People v Henry,* 95 NY2d 563; *People v Stultz,* 2 NY3d 277; *People v Nesbitt,* 20 NY3d 1080; *People v Caban,* 5 NY3d 143; *People v Hobot,* 84 NY2d 1021; *People v Flores,* 84 NY2d 184; *People v Turner,* 10 AD3d 458.)

*Cyrus R. Vance, Jr., District Attorney*, New York City (*Christopher P. Marinelli* and *Alan Gadlin* of counsel), for respondent. I. At trial, the People conclusively demonstrated defendant's guilt of possessing a weapon with the intent to use it unlawfully. (*People v Hawkins*, 11 NY3d 484; *People v Ramos*, 19 NY3d 133; *People v Danielson*, 9 NY3d 342; *People v Contes*, 60 NY2d 620; *People v Montanez*, 41 NY2d 53; *People v Williams*, 84 NY2d 925; *People v Malagon*, 50 NY2d 954; *People v Bell*, 48 NY2d 913; *People v Edwards*, 39 AD3d 1078; *People v Bleakley*, 69 NY2d 490.) II. Defendant's trial attorney was an effective advocate on defendant's behalf. (*People v Rodriguez*, 68 NY2d 674; *People v Williams*, 84 NY2d 925; *People v Caban*, 5 NY3d 143; *People v Stultz*, 2 NY3d 277; *People v Gerard*, 50 NY2d 392; *People v Haffiz*, 19 NY3d 883; *People v Rivera*, 71 NY2d 705; *People v Brown*, 45 NY2d 852; *People v Benevento*, 91 NY2d 708; *Strickland v Washington*, 466 US 668.)

## OPINION OF THE COURT

Abdus-Salaam, J.

During the early morning hours on September 21, 2009, defendant Oliverio Galindo shot his cousin Augustine Castaneda in the leg. He accompanied his cousin to the hospital and was later arrested at Broome Street Bar in Manhattan where he and Castaneda were employed. Defendant was indicted on two counts of criminal possession of a weapon in the second degree, one count for possession of a loaded firearm with the intent to use it unlawfully against another (Penal Law § 265.03 [1] [b]), and the other for possession of the same outside his home or place of business (*id.* at [3]).

At trial, the People presented evidence that, shortly after 1:00 a.m. on the date in question, defendant and Castaneda parted ways with their coworkers in front of Broome Street Bar. Castaneda did not appear to be injured at that time. About 20 minutes later, however, defendant and Castaneda arrived at Bellevue Hospital for Castaneda to be treated for a gunshot wound to the leg. Several hours later, defendant returned to Broome Street Bar to work Castaneda's shift as a dishwasher. Luis Flores, defendant's manager and friend, testified that, when he asked defendant why he was covering Castaneda's shift, defendant initially told him that he and Castaneda had been "mugged outside the restaurant" and that Castaneda had been shot during the course of the robbery. When Flores pressed defendant for more details, defendant eventually admitted that he was the one who shot Castaneda "outside the restaurant." Defendant

told Flores that he was "showing the gun" to Castaneda when it "went off as an accident." Defendant later "dumped" the gun in a "big container[ ]" near the hospital. In addition to this testimony, the People admitted into evidence the transcript of a recorded telephone call defendant placed to an unidentified woman while in prison, during which defendant urged the woman to tell his cousin "not to go to court." Defendant did not present any evidence at trial and his motions to dismiss the indictment, made at the close of the People's case and the close of all proof, were denied.

Prior to deliberations, the trial court instructed the jury, without objection by defendant, that if the People proved "beyond a reasonable doubt that the defendant possessed a loaded firearm," the jury "may, but [was] not required to, infer" that defendant possessed the weapon with the "intent to use the same unlawfully against another." The jury returned a verdict convicting defendant of both counts of second-degree criminal possession of a weapon, and defendant was sentenced to two concurrent, determinate prison terms of four years, to be followed by three years of postrelease supervision.

The Appellate Division affirmed, stating that "the circumstances of defendant's possession of a loaded firearm, viewed in light of the statutory presumption of unlawful intent (Penal Law § 265.15 [4]), provided legally sufficient evidence of defendant's intent to use a weapon unlawfully against another" (*People v Galindo*, 101 AD3d 408, 408 [1st Dept 2012]). A Judge of this Court granted defendant leave to appeal (21 NY3d 912 [2013]), and we now affirm.

A person is guilty of criminal possession of a weapon in the second degree when "with intent to use the same unlawfully against another, such person: . . . possesses a loaded firearm" (Penal Law § 265.03 [1] [b]). Penal Law § 265.15 (4) provides that "[t]he possession by any person of any . . . weapon . . . is presumptive evidence of intent to use the same unlawfully against another" person. Defendant, asserting that the evidence was legally insufficient to support his conviction under Penal Law § 265.03 (1) (b), challenges the use of the statutory presumption of unlawful intent based on the circumstances of this case, where the People presented no direct evidence of intent and Flores's testimony suggested that defendant shot his cousin accidentally. We find no error in the application of the statutory presumption and conclude that the evidence supporting defendant's conviction was legally sufficient.

"A statutory presumption is a deduction or an inference which the trier of fact may draw from facts found or otherwise established during the course of the trial" (*People v Leyva*, 38 NY2d 160, 168 n 3 [1975]). This evidentiary device "[is] a staple of our adversary system of factfinding," which often requires "the trier of fact to determine the existence of an element of the crime—that is, an 'ultimate' or 'elemental' fact—from the existence of one or more 'evidentiary' or 'basic' facts" (*County Court of Ulster Cty. v Allen*, 442 US 140, 156 [1979] [denying federal writ of habeas corpus from defendant's weapon possession conviction affirmed in *People v Lemmons* (40 NY2d 505 [1976])]). The presumption of unlawful intent under Penal Law § 265.15 (4), like all statutory presumptions in New York, is a permissive presumption (*People v McKenzie*, 67 NY2d 695, 696 [1986]), meaning that "[it] allows, but does not require, the trier of fact to accept the presumed fact, and does not shift to the defendant the burden of proof" (*Matter of Raquel M.*, 99 NY2d 92, 95 [2002], citing *Allen*, 442 US at 157).[1]

The purpose of a statutory presumption is to allow a particular fact to be established by "inferential" proof (*Leyva*, 38 NY2d at 168 [describing the presumption under Penal Law § 220.25]). Before the presumption may apply, the People must establish beyond a reasonable doubt the predicate fact or facts "the statute requires be proved" (*id.* at 169; *see Allen*, 442 US at 156). If the People succeed in this endeavor, they are entitled to rely on the presumption, which "form[s] part of the support for [their] prima facie case" against the defendant (*Leyva*, 38 NY2d at 169; *see Allen*, 442 US at 157 [with a permissive presumption, "the basic fact may constitute prima facie evidence of the elemental fact"]; *Matter of Raquel M.*, 99 NY2d at 96). The presumption may be rebutted by any evidence in the case; that is, evidence presented by the defendant or the People (*see Matter of Raquel M.*, 99 NY2d at 95; *Leyva*, 38 NY2d at 167, 169). Evidence rebutting the presumption will not "negate the existence of a prima facie case; rather it presents an alternate set of facts, or inferences from facts, to the jury. The jury then has the right to choose between the two versions" (*Leyva*, 38 NY2d at 169). In other words, the presumption "receives the same treat-

---

**1.** By contrast, a "mandatory presumption . . . tells the trier that he or they *must* find the elemental fact upon proof of the basic fact, at least unless the defendant has come forward with some evidence to rebut the presumed connection between the two facts" (*Allen*, 442 US at 157).

ment that any other 'fact' so thoroughly controverted would receive" (*id.* at 170).

The predicate fact the People must prove to trigger the presumption of unlawful intent under Penal Law § 265.15 (4) is possession of "any weapon." Once the People have proven this fact beyond a reasonable doubt, the unlawful intent presumption becomes part of the People's prima facie case, which the defendant may rebut with contrary proof or, as in this case, he or she may rely on the People's evidence to rebut the presumption. It is then for the jury, after proper instructions by the court, to weigh the competing inferences and determine whether to accept or reject the presumption. Where, as here, the defendant contends that his conviction is not supported by legally sufficient evidence, we review the evidence in a light most favorable to the People, and will not disturb a conviction as long as there exists "any valid line of reasoning and permissible inferences which could lead a rational person to the conclusion reached by the jury on the basis of the evidence at trial" (*People v Bleakley*, 69 NY2d 490, 495 [1987]).

Applying these principles, we conclude that the evidence that defendant possessed a loaded firearm, together with the statutory presumption of intent arising from such possession, was legally sufficient to support his conviction for criminal possession of a weapon in the second degree under Penal Law § 265.03 (1) (b). Viewing the evidence in the light most favorable to the People—particularly, Flores's testimony that defendant admitted to shooting Castaneda—a rational jury could have concluded that the People proved, beyond a reasonable doubt, that defendant possessed a loaded firearm (*see* Penal Law § 265.03 [1] [b]). Since the People established this predicate fact, the jury was entitled, but not required, to infer that defendant intended to use the weapon unlawfully pursuant to Penal Law § 265.15 (4). The jury's decision to accept this inference created by the statutory presumption was reasonable. A rational jury could have concluded that defendant possessed the loaded gun he "showed" his cousin on a public street, and there was no proof at trial suggesting that defendant possessed the gun for a lawful purpose. To the contrary, evidence that defendant disposed of the gun after the shooting, initially lied to Flores about how Castaneda was shot, and urged Castaneda not to come to court supports the inference of unlawful intent when viewed in a light most favorable to the People.

Defendant and the dissent argue that defendant's admission to Flores that he accidentally shot Castaneda rebutted any infer-

ence of unlawful intent. As the Appellate Division noted, however (*see* 101 AD3d at 408), the People never alleged, nor were they required to prove, that defendant specifically intended to use the gun unlawfully against Castaneda or any particular person, only that he intended to use it against "another" person (Penal Law § 265.03 [1] [b]). Thus, while this testimony may have suggested that defendant did not intend to use the gun unlawfully against Castaneda, it was not inconsistent with the inference that he intended to use the gun unlawfully against *someone other* than his cousin. And even if the People's evidence rebutted this inference, the jury was still entitled to weigh all the competing inferences in deciding whether to accept or reject the presumption of unlawful intent. Although the dissent believes the evidence "that defendant had *accidentally* shot his cousin . . . would appear to negate any intent to use the weapon unlawfully against another" (dissenting op at 727), the jury reasonably concluded otherwise and we find no legal basis upon which to disturb its verdict.

The dissent claims that without "direct or circumstantial" evidence of defendant's intent, "the jury could not have rationally concluded that defendant's mere possession of a loaded firearm established his intent to unlawfully use it against another" (*id.* at 727). But that is exactly what the legislature intended Penal Law § 265.15 (4) to permit a jury to do: find that a defendant intended to use a weapon unlawfully merely because he or she possessed that weapon. This permissive presumption would be superfluous if, as the dissent suggests, the People were required to put forth independent evidence of intent to prove that element of the offense.[2] Nor can the dissent credibly claim that the presumption of unlawful intent was unconstitutional as applied to defendant here; that is, that there was no "reasonably high degree of probability" that the presumed fact (defendant's unlawful intent) could follow from the basic facts proved directly at trial (defendant's possession of a loaded gun) (*Leyva*, 38 NY2d at 166 [internal quotation marks omitted], quoting

**2.** Contrary to the dissent's view, we do not read *Allen* as requiring the People to provide "ample evidence" of *intent* "other than the presumption to support a conviction" (442 US at 160). Rather, we believe the United States Supreme Court used that phrase to draw the distinction between the proper constitutional analysis of a mandatory presumption, which must be "divorced from [the] facts [of a given case] and based on the presumption's accuracy in the run of cases" (*id.* at 159), and the analysis of a permissive presumption, which "rest[s] on an evaluation of the presumption as applied to the record before the Court" (*id.* at 162-163).

*People v McCaleb*, 25 NY2d 394, 404 [1969]; *see also Allen*, 442 US at 156-157; *Matter of Raquel M.*, 99 NY2d at 95-96). In any event, we need not reach this issue since defendant has not challenged the constitutionality of Penal Law § 265.15 (4).

Finally, we have considered defendant's ineffective assistance of counsel claims related to his conviction for second-degree criminal possession of a weapon outside his home or place of business (*see* Penal Law § 265.03 [3]), and we find them unavailing (*see e.g. People v Caban*, 5 NY3d 143, 152 [2005]).

Accordingly, the Appellate Division order should be affirmed.

PIGOTT, J. (dissenting in part). Defendant was convicted of two counts of criminal possession of a weapon in the second degree (Penal Law §§ 265.03 [1] [b] [count one]; 265.03 [3] [count two]). Because the People failed to present proof establishing that defendant, while possessing a loaded firearm, intended to use it "unlawfully against another" (count one), I respectfully dissent.

The People's proof plainly established that defendant possessed a loaded firearm outside his home or place of business (Penal Law § 265.03 [3]),* a class C felony. One act, one crime. However, the People claim, and the majority agrees, that the People were entitled to go further and rely on Penal Law § 265.15 (4)'s presumption that "[t]he possession by any person of any . . . weapon . . . is presumptive evidence of intent to use the same unlawfully against another" in order to pile on a second felony conviction for the same act.

In many cases, the People should be able to rely on such a presumption, but only where "there is ample evidence in the record *other than the presumption* to support a conviction" (*County Court of Ulster Cty. v Allen*, 442 US 140, 160 [1979] [emphasis supplied]). There must be "a rational connection between [the] facts proved directly and [the] ones to be inferred" (*People v Leyva*, 38 NY2d 160, 165 [1975]), and the connection must necessarily "assure 'a reasonably high degree of prob-

---

* Notably, in 2006, the legislature inadvertently repealed the crime of possession of a loaded firearm with the intent to use the same unlawfully against another (L 2006, ch 742, § 1), notwithstanding the Attorney General's concern that the legislation contained an "unintended flaw," namely, that "it would significantly reduce the penalties that [could] be imposed on perpetrators of domestic violence who intend to use loaded, illegal firearms to further harm those they victimize" (Mem of Off of Atty Gen, Bill Jacket, L 2006, ch 742 at 6-7). The legislature corrected that flaw the following month (L 2006, ch 745).

ability' that the presumed fact follows from those proved directly" (*id.* at 166, quoting *People v McCaleb*, 25 NY2d 394, 404 [1969]).

Here, there is no such connection. The People were able to directly prove that defendant possessed a loaded weapon, but the only proof the People presented concerning defendant's intent relative to count one was that defendant had *accidentally* shot his cousin, evidence that would appear to negate any intent to use the weapon unlawfully against another. To be sure, as the majority states, the People need not prove that defendant intended to use the weapon unlawfully against a particular person (majority op at 725); but the People must do more than simply rely on a permissive presumption to meet their burden (*see Allen*, 442 US at 167; *United States v Curcio*, 712 F2d 1532, 1541 [2d Cir 1983] ["(a)s long as it is clear that the presumption is not the sole and sufficient basis for a finding of guilt, it need meet only a more likely than not rather than a beyond a reasonable doubt standard"] [internal quotation marks omitted]).

Given the lack of *any* evidence, direct or circumstantial, concerning defendant's intent to use the weapon unlawfully against another, the jury could not have rationally concluded that defendant's mere possession of a loaded firearm established his intent to unlawfully use it against another. More than likely, having determined that defendant unlawfully possessed the weapon, the jury concluded that the accidental shooting of his cousin must have been an unlawful use against another, the result being a defendant convicted twice for one possession— something the law neither contemplates nor permits. I would therefore reverse and dismiss count one of the indictment.

Judges GRAFFEO, READ, SMITH and RIVERA concur with Judge ABDUS-SALAAM; Judge PIGOTT dissents in part in an opinion in which Chief Judge LIPPMAN concurs.

Order affirmed.