NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2021 VT 18

No. 2020-028

| | |
|---|---|
| State of Vermont | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Rutland Unit, |
| | Criminal Division |
| | |
| Christopher D. Hale | November Term, 2020 |

Thomas A. Zonay, J.

Travis W. Weaver, Rutland County Deputy State's Attorney, Rutland, for Plaintiff-Appellee.

Allison N. Fulcher of Martin, Delaney & Ricci Law Group, Barre, for Defendant-Appellant.

PRESENT: Reiber, C.J., Robinson, Eaton, Carroll and Cohen, JJ.

¶ 1. **CARROLL, J.** Defendant appeals a trial court decision denying his motion for judgment of acquittal on his charge of possessing brass knuckles with the intent to use them. He argues that although he possessed brass knuckles, the State failed to produce sufficient evidence of his intent to use them. We affirm.

¶ 2. The record indicates the following. In January 2017, defendant was charged by information with one count of possessing marijuana, in violation of 18 V.S.A. § 4230(a)(1), and one count of possessing brass knuckles with the intent to use them, in violation of 13 V.S.A. § 4001. The possession-of-marijuana charge was dismissed in January 2019. A jury trial was held on the brass-knuckles charge in March.

¶ 3. The State introduced the following evidence at trial. On December 31, 2016, two police officers observed defendant parked in his vehicle in the driveway of an apartment complex appearing to smoke marijuana. Upon approaching the vehicle, the officers noticed defendant in the driver seat and another person in the passenger seat. When one of the officers asked the occupants what they were doing, defendant responded that they were just smoking a bowl.

¶ 4. The officer asked defendant for consent to search his vehicle, which defendant eventually provided. Upon searching the vehicle, the officer discovered a backpack with a Mason jar that contained approximately one-and-a-half ounces of marijuana, which at the time had a street value of a couple hundred dollars. Defendant was placed under arrest for possession of marijuana and transported to the police department for processing. There, the officer discovered brass knuckles in defendant's front left pocket, which the officer described as a weapon "used to go over the knuckles of your hand to punch somebody, obviously to cause or inflict injury to an individual." When asked why he had the brass knuckles, defendant told the officer he had them for protection.

¶ 5. Following the close of the State's evidence, defendant moved for judgment of acquittal under Vermont Rule of Criminal Procedure 29. He argued that the State failed to produce any evidence demonstrating that at the time the officer discovered the brass knuckles, he had "a present and specific intent" to use them.

¶ 6. The court denied the motion, explaining, based on 13 V.S.A. § 4001's plain language, that the statute prohibited the possession of brass knuckles with the intent to use them, which included future intent to use. By including the intent-to-use element, the trial court explained, the Legislature intended to distinguish between those who merely possess brass knuckles—such as collectors and mail carriers delivering them somewhere—and those who possess with the intent to use them "for the intended purpose of causing damage and harm." But the court noted that intent to use did not have an immediacy element and that requiring one would

2

defeat the purpose of the statute, which was to "reduce the risk of violence and reduce the risk of someone being harmed" by brass knuckles. Based on this interpretation, the trial court concluded, viewing the evidence in the light most favorable to the State, that defendant possessed brass knuckles with the intent to use them "if he needed to."[1] Defendant was later convicted and sentenced to serve one to five years.

¶ 7. On appeal, defendant argues that the court erred in denying his motion for judgment of acquittal. Because there is no dispute that defendant possessed brass knuckles, he focuses on the intent-to-use element, arguing that intent to use requires an imminency component—that is, there must be a present and specific intent to use brass knuckles and not an intent to use at some future point. Under this interpretation of § 4001, defendant submits that his statement that he had the brass knuckles for protection was insufficient to prove intent to use.

¶ 8. "We review the denial of a judgment of acquittal de novo." State v. Berard, 2019 VT 65, ¶ 7, ___ Vt. ___, 220 A.3d 759. "In reviewing the denial of a motion for judgment of acquittal based on a claim of insufficient evidence, we apply the identical standard as that employed by the trial court: we view the evidence in the light most favorable to the State, excluding any modifying evidence, and determine whether it is sufficient to fairly and reasonably convince a trier of fact that the defendant is guilty beyond a reasonable doubt." State v. Stephens, 2020 VT 87, ¶ 10, ___Vt. ___, ___ A.3d ___ (quotation omitted). "We examine both the strength and the quality of the evidence; evidence that gives rise to mere suspicion of guilt or leaves guilt uncertain or dependent upon conjecture is insufficient." State v. Discola, 2018 VT 7, ¶ 18, 207 Vt. 216, 184

---

[1] Defendant suggests the trial court held that the requirements of § 4001 are met when a person possesses brass knuckles. Although the trial court said in passing that the requirements of the statute are met when a person possesses brass knuckles, it is clear in context the court concluded that § 4001 requires that a person both possess brass knuckles and intend to use them.

A.3d 1177 (quotation omitted). However, "[w]e are not triers of fact, and we will not substitute our judgment for that of the jury." State v. Johnson, 2013 VT 116, ¶ 27, 195 Vt. 498, 90 A.3d 874.

¶ 9. We begin by examining what intent to use means under § 4001.[2] "In construing a statute, our paramount goal is to discern and implement the intent of the Legislature." Berard, 2019 VT 65, ¶ 12 (quotation omitted). "[T]o discern legislative intent, we first look to the plain language of the statute." State v. Billington, 2020 VT 78, ¶ 10, ___ Vt. ___, ___ A.3d ___ (quotation omitted). "If the intent of the Legislature is apparent on the face of the statute because the plain language of the statute is clear and unambiguous, we implement the statute according to that plain language." Berard, 2019 VT 65, ¶ 12 (quotation omitted). "Conversely, if the statute is ambiguous, we ascertain legislative intent through consideration of the entire statute, including its subject matter, effects and consequences, as well as the reason and spirit of the law." Id. (quotation omitted).

¶ 10. We cannot agree with the trial court that intent to use has a plain and unambiguous meaning. Because intent is generally defined as the "state of mind accompanying an act," the statute is necessarily silent on what kind of intent is required. Intent, Black's Law Dictionary (11th ed. 2019). Nevertheless, other statutes dealing with possession of weapons, in coordination with § 4001's language and structure, provide a clear indication of the meaning of the phrase intent to use.

¶ 11. Section 4001 deals with a category of weapons—slung shots, blackjacks, brass knuckles, and similar weapons—designed to be held in the hand and increase the damage that a strike from the fist can cause. State v. Brunner, 2014 VT 62, ¶ 12, 196 Vt. 571, 99 A.3d 1019

---

[2] No party has raised whether we assess the sufficiency of the evidence against hypothetically correct jury instructions, the jury instructions as given, or the statute. We assume for the purposes of this appeal that we measure sufficiency using the statute and do not reach the issue.

(describing brass knuckles in core form as "a device designed to be gripped in a clenched fist, that fits over the knuckles, and that is designed to increase the damage caused from a strike of the fist"); Blackjack, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/blackjack [https://perma.cc/4KQ3-MH2D] (defining blackjack as "a hand weapon typically consisting of a piece of leather-enclosed metal with a strap or springy shaft for a handle"); Slungshot, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/slungshot [https://perma.cc/TU4P-AXV6] ("[A] striking weapon consisting of a small mass of metal or stone fixed on a flexible handle or strap."). Concerned with the specific dangers posed by this category of weapons, the Legislature prohibited (1) using these weapons against another person, (2) attempting to use them against another person, and (3) possessing them with the intent to use. 13 V.S.A. § 4001.

¶ 12. Here, we are concerned with the third prohibition: possession with intent to use. For other categories of weapons, the Legislature has simply prohibited the act of possession. See, e.g., 13 V.S.A. § 1604 (prohibiting possession of destructive or hoax device)[3]; id. § 4013 (prohibiting possession of "a weapon commonly known as a 'zip' gun, or a weapon commonly known as a switchblade knife," which has a blade of three or more inches). Section 4001 reflects a different approach. Unlike other weapons that the Legislature has determined are inherently dangerous—such as zip guns, switchblades knives, and hoax devices—the Legislature has concluded that the category of weapons enumerated in § 4001—slung shots, blackjacks, brass knuckles, and similar weapons—only pose a danger worthy of criminal prohibition when a person possesses them with the intent to use.

---

[3] A "hoax device" is defined in part as "any device so designed, assembled, fabricated, or manufactured as to convey the physical appearance of an explosive or incendiary bomb . . . that is lacking an explosive or incendiary charge." Id. § 1603(3).

5

¶ 13.    But similar to other possession statutes, the language and structure of § 4001 indicate that in prohibiting possession with intent to use, the Legislature was not concerned with how imminently a person intends to use the weapons enumerated in § 4001.  Rather, the Legislature determined that when brass knuckles and similar weapons are possessed with the intent to use them, the weapons pose a danger, like other inherently dangerous weapons, significant enough to warrant a criminal prohibition.

¶ 14.    First, as the trial court noted, intent to use does not have an immediacy element. Section 4001 requires only intent to use, not imminent or immediate intent to use.  It is a well-settled principle of statutory construction that we will not read words into a statute that are not there, "unless it is <u>necessary</u> in order to make [the statute] effective."  <u>State v. Fuller</u>, 163 Vt. 523, 528, 660 A.2d 302, 305 (1995) (quotation omitted).  The Legislature's omission of an immediacy element indicates that it intended to prohibit possession of a category of dangerous weapons— slung shots, blackjacks, brass knuckles, and similar items—if someone intends to use them, whether presently or in the future, for the purpose of causing harm.

¶ 15.    Second, to the extent the Legislature was concerned with use and imminent use of brass knuckles and similar weapons, it addressed that concern directly by prohibiting their use and attempted use.  See 13 V.S.A. § 4001 (prohibiting use and attempted use of slung shots, blackjacks, and similar weapons "against another person").

¶ 16.    Finally, analogous statutes from other states support our conclusion that the Legislature intended to prohibit possession of the category of weapons enumerated in § 4001 if a person intends to use them at any point for the purpose of causing harm.  See <u>Billington</u>, 2020 VT 78, ¶ 17 (considering "similar statutes" from other states in interpreting Vermont statute).  Other states have criminalized similar dangerous weapons only if a person possesses them for an unlawful use against another person.  Cf. D.C. Code Ann. § 22-4514(b) (prohibiting possession of

6

"an imitation pistol, or a dagger, dirk, razor, stiletto, or knife with a blade longer than 3 inches" with "intent to use unlawfully against another"); Or. Rev. Stat. Ann. § 166.220(1)(a) (providing that person "commits the crime of unlawful use of a weapon" if they possess "a dangerous or deadly weapon" with intent to use it "unlawfully against another"). In § 4001, however, the Legislature did not limit the prohibition to unlawful use against another person; it prohibited possession with intent to use.

¶ 17. In sum, we conclude that in prohibiting possession with the intent to use, the Legislature was not concerned with how imminently a person intends to use brass knuckles and similar weapons. Other possession statutes, as well as the language and structure of § 4001, indicate that the Legislature was concerned with the inherent dangers posed by brass knuckles and similar weapons when a person merely possesses them with the intent to use, whether presently or in the future.

¶ 18. This brings us to defendant's second argument, which focuses on the strength of evidence presented at trial. He argues that his statement that he had the brass knuckles for protection was insufficient to prove intent to use. The problem with defendant's argument is that it overlooks the other circumstantial evidence the State presented regarding his intent to use the brass knuckles. State v. Dow, 2016 VT 91, ¶ 8, 202 Vt. 616, 152 A.3d 437 ("Intent is rarely proved by direct evidence; it must be inferred from a person's acts and proved by circumstantial evidence." (quotation omitted)).

¶ 19. The evidence introduced at trial indicates that on the evening of December 31, 2016, defendant and a passenger were sitting in defendant's vehicle in front of an apartment complex where defendant did not live. Defendant had one-and-a-half ounces of marijuana in his possession, which, at the time, was worth a couple hundred dollars. In his front left pocket, defendant had brass knuckles, which he later told a police officer were for protection. Viewing

the evidence in the light most favorable to the State, defendant's statement that he had the brass knuckles for protection—coupled with the other circumstantial evidence, including that defendant was in his vehicle at night possessing several hundred dollars' worth of marijuana—was sufficient to convince a trier of fact beyond a reasonable doubt that defendant possessed brass knuckles with the intent to use them.

Affirmed.

FOR THE COURT:

_____
Associate Justice

¶ 20.  **COHEN, J., dissenting**.  Based essentially on his single statement to police that he was in possession of brass knuckles "for protection," defendant was convicted of a serious felony, punishable by up to five years in prison, for possessing brass knuckles "with intent . . . to use" them "against another person."  13 V.S.A. § 4001.  Given the absence of any evidence that defendant specifically intended to use the brass knuckles against another person other than in some hypothetical and conditional situation at some potential future time, I cannot join the majority's determination that the State met its burden of proving beyond a reasonable doubt the specific-intent element of the statute.

¶ 21.  I agree with the majority that the intent element in § 4001 does not have a plain and unambiguous meaning with respect to what exactly the State must prove to obtain a conviction. Without question, however, § 4001 is a specific-intent crime requiring an "intent to accomplish the precise criminal act that one is later charged with."[4] Specific intent, Black's Law Dictionary

_____

[4]  The trial court instructed the jury that defendant "must've acted with the necessary specific intent to use" the brass knuckles and defined specific intent as "a decision to act with a conscious objective of accomplishing a specific result."

8

(11th ed. 2019); see also Intent, Black's Law Dictionary (11th ed. 2019) ("The state of mind accompanying an act, esp. a forbidden act. While motive is the inducement to some act, intent is the mental resolution or determination to do it."). As the majority points out, § 4001 is therefore distinct from general-intent Vermont statutes that prohibit the knowing possession of certain categories of weapons, irrespective of any intent to use the weapons. See ante, ¶ 12.

¶ 22.    Specific-intent statutes may be insulated from vagueness or overbreadth challenges by requiring that defendants must have had the specific intent as plainly defined in the law. See, e.g., State v. Read, 165 Vt. 141, 149, 680 A.2d 944, 949 (1996) ("Limiting punishment to those who use abusive language with the requisite mental state is sufficient to save the statute from a vagueness or overbreadth challenge."). The recognized ambiguity in § 4001's intent element invokes the rule of lenity, which "requires that any doubts created by ambiguous legislation be resolved in favor of the defendant." State v. Berard, 2019 VT 65, ¶ 17, ___ Vt. ___, 220 A.3d 759 (quotation omitted); see also State v. Brunner, 2014 VT 62, ¶ 11, 196 Vt. 571, 99 A.3d 1019 ("Under the rule of lenity, we resolve ambiguity in statutory language in favor of the defendant but will not apply the rule if the statute is clear and unambiguous."). The rule ensures that statutes provide "fair warning of the legal consequences for committing certain, defined acts." In re K.A., 2016 VT 52, ¶ 9, 202 Vt. 86, 147 A.3d 81.

¶ 23.    In my view, § 4001 does not provide adequate warning that a person may be convicted of a felony and imprisoned for up to five years for possessing brass knuckles based on the person's statement that at some uncertain time in the future the brass knuckles may be used for protection against some potential attacker. Cf. Monroe v. United States, 598 A.2d 439, 442 (D.C. 1991) (Schwelb, J., dissenting) (opining that rule of lenity precludes conviction for "the act of

9

carrying a lawful object with a hypothetical but lawful future intent [to use the object for protection] unless the legislature has plainly and unambiguously made such activity criminal").[5]

¶ 24. To be convicted under the statute, a person must either use, attempt to use, or intend to use brass knuckles "against another person." 13 V.S.A. § 4001. The latter category—the one under which defendant was charged in this case—appears to be designed to capture acts short of a legal attempt to use, but nonetheless requiring some conduct demonstrating a tangible intent to use the weapon against another person.

¶ 25. To convict someone of attempting to commit a certain crime, the State must prove not only an "intent to commit" the crime but also that the defendant engaged in "an overt act designed to carry out that intent." State v. Devoid, 2010 VT 86, ¶ 10, 188 Vt. 445, 8 A.3d 1076 (quotation omitted); see also 13 V.S.A. § 9(a) (providing punishment for "person who attempts to commit an offense and does an act toward the commission thereof, but by reason of being interrupted or prevented fails in the execution of the same"). "An overt act must advance beyond mere intent and reach far enough toward accomplishing the desired result to amount to the commencement of the consummation." Devoid, 2010 VT 86, ¶ 11 (quotation omitted). "Preparation counts as an [overt] act if it would be likely to end, if not extraneously interrupted, in

---

[5] The statute at issue in Monroe prohibited persons from carrying an unlicensed pistol or any deadly or dangerous weapon outside their homes or property. 598 A.2d at 439 n.1. The defendant, who claimed to be a bodyguard, was charged with the offense after he told security officers at the United States Capitol that he wished to leave his briefcase at the security station because it contained weapons that he used "for protection" and in his work. Id. at 440. In a 2-1 decision following the defendant's conviction and appeal, the majority rejected defendant's argument that he could not be convicted of the crime because there was insufficient proof of present intent to use the weapons at the time he was arrested. Id. at 441. Although indicating that past caselaw had established as one of the statute's elements an intent to use the object as a dangerous weapon, id. at 440, the majority acknowledged that the statute did not require "evidence [of] a specific intent to use [the weapons] for an unlawful purpose," id. at 441 (quotation omitted). In contrast, as discussed above, § 4001 is a specific-intent crime that requires the State to prove defendant intended to use one of the listed weapons or a similar weapon against another person.

10

the consummation of the crime intended." Id. (quotation omitted). In short, the State must prove substantial advancement toward accomplishment of a crime to obtain a conviction for attempt.

¶ 26. The Legislature likely wanted to criminalize conduct sufficient to prove a specific intent to use weapons such as brass knuckles, without requiring the State to prove conduct amounting to actual commencement of consummation of the weapons' use before being interrupted. I see nothing in the statute to suggest that the Legislature intended to impose up to five years of imprisonment based on a person's acknowledgement of the weapon's potential defensive use at some uncertain time in the future. If that were the case, it would be difficult to reconcile the Legislature's imposition of a maximum two-year sentence for persons who carry "dangerous or deadly weapon[s]," including firearms, see 13 V.S.A. § 4016(a)(2), "with the intent to injure another." 13 V.S.A. § 4003.

¶ 27. For all practical purposes, the majority's interpretation of § 4001 effectively criminalizes the mere personal possession of the weapons listed therein, even though, as the majority points out, the Legislature has demonstrated that it knows how to criminalize in plain terms possession without use or intended use. See, e.g., 13 V.S.A. § 4004(a) (prohibiting knowing possession of firearm or other dangerous or deadly weapons within school building or on school bus); id. § 4013 (prohibiting, among other things, possession of "zip" gun or switchblade knife with blade more than three inches long). Again, the punishment for these offenses informs our understanding of the intent underlying § 4001. Possession of a zip gun or switchblade knife is punishable by no more than ninety days imprisonment. Id. § 4013. Possession of a firearm or other dangerous or deadly weapon within a school building or on a school bus is punishable by up to one year in prison for a first offense and up to three years for a second or subsequent offense, id. § 4004(a); notably, however, possession in the same circumstances "with the intent to injure another person" is punishable by up to three years in prison for a first offense and up to five years

11

for a second or subsequent offense, id. § 4004(b). See State v. Linthwaite, 665 P.2d 863, 868 (Or. 1983) (en banc) (explaining that construing statute to allow conviction for attempt to use dangerous weapon without requiring victim would not comport with punishment for violation of related statutes and might lead to absurd results by criminalizing innocent behavior).

¶ 28. There are many examples of decisions in other states where persons were prosecuted and convicted under statutes similar to § 4001 for engaging in conduct evincing an intent to use dangerous weapons against another; however, I have not been able to find—and apparently neither has the majority—any case in which a defendant was prosecuted and convicted under facts remotely similar to the instant case. See, e.g., United States v. Williams, 601 F. App'x 423, 424-25 (6th Cir. 2015) (concluding that evidence was sufficient to support enhancement based on violation of statute prohibiting carrying dangerous weapon with intent to use unlawfully against another person, where defendant's own statements indicated he brought gun to his cousin's apartment to confront cousin about debt cousin owed him); State v. Slayton, 417 N.W.2d 432, 434-35 (Iowa 1987) (concluding that evidence was sufficient to support conviction for carrying dangerous weapon with intent to use against another person, where defendant went into his parents' bedroom and pointed shotgun at them and then placed shell in gun after following mother outside); State v. McAuliffe, 366 P.3d 1206, 1210 (Or. Ct. App. 2016) (concluding that rational trier of fact could find that defendant carried or possessed deadly or dangerous weapon with intent to use against another, where defendant pointed shotgun at airplane flying overhead after complaining about and expressing threats against repeated flights over his property); cf. People v. Sullivan, 263 N.E.2d 38, 39-40 (Ill. 1970) (concluding that evidence was insufficient to convict defendants of possessing hunting knives with intent to use unlawfully against another person, where police acting on tip that weapons were being unlawfully transported found defendants in possession of knives late at night in residential area).

¶ 29.    I do not mean to suggest that the State must prove the intended use was imminent or directed against a particular person.  See, e.g., State v. Buchanan, 207 N.W.2d 784, 786 (Iowa 1973) (affirming conviction for carrying pistol with intent to use unlawfully against another person, where defendant confronted police with gun following report of domestic abuse, and rejecting defendant's argument that prosecution had to prove defendant intended to shoot particular person); State v. Greene, 134 A.2d 118, 122-24 (N.J. Super. Ct. App. Div. 1957) (affirming defendant's conviction for possessing firearm with intent to use unlawfully against another person, where defendant returned to apartment in which she had scuffled with another woman and waived revolver around asking where woman was, and concluding that State was not required to name in indictment particular person who defendant intended to use gun against).[6]

_____

[6] Two other cases are noteworthy on this point.  The first one concerned a defendant who shot his cousin in the leg and then first reported that he and his cousin had been mugged before admitting that he shot him, although he claimed this was by accident.  After his conviction for possessing a firearm with intent to use it unlawfully against another person, the defendant challenged the sufficiency of the evidence on the intent element.  A majority of the New York Court of Appeals concluded "that the evidence that defendant possessed a loaded firearm, together with the statutory presumption of intent arising from such possession, was legally sufficient to support his conviction."  People v. Galindo, 17 N.E.3d 1121, 1124 (N.Y. 2014).  The court reasoned that, given the circumstances of the case, the jury could have reasonably accepted the permissive statutory presumption that the predicate fact of possession of the weapon in this case demonstrated an intent to use the weapon against another.  Id. at 1125.  In response to the defendant's reliance on the fact that he testified he accidentally shot his cousin, the court stated that the prosecution was not required to prove that defendant specifically intended to use the gun against his cousin or any particular person.  Id.  The dissenters agreed that the prosecution did not need to prove that the defendant intended to use the weapon unlawfully against a particular person, but they opined that the prosecution "must do more than simply rely on a permissive presumption to meet [its] burden."  Id. at 1126-27 (Pigott, J., dissenting).  Vermont does not have a permissive statutory presumption regarding intent to use dangerous weapons.

The defendant in the other case brandished a knife and threatened three family members and a bystander after nearly colliding with the family's parked car.  The defendant was convicted on four counts of attempting to use a dangerous knife unlawfully against another person.  The defendant argued on appeal that because the words "unlawfully against another" immediately followed "with intent to use the same" but not "attempts to use," he could be convicted on only one count of brandishing a knife.  Linthwaite, 665 P.2d at 866.  The court rejected this argument, construing the statute to require "that there be a victim for there to be a crime of attempted use of the weapon."  Id. at 869.  I do not read this holding as requiring the State to prove intent to use a

13

¶ 30. But the underlying intent must be connected to an actual, temporal situational context to support the felony charge of intending to use one of the weapons designated in § 4001 against another person. To be sure, the State could obtain a conviction under § 4001 if, for example, direct or circumstantial evidence demonstrated that the defendant intended to go to a planned rally in possession of a listed weapon with the expectation that the weapon would be used against one or more of the protestors, without having a particular person in mind. But, in my view, the State cannot obtain a conviction in the present circumstances, where there is no actual or temporal context for the alleged intent-to-use element of the crime.

¶ 31. Defendant's single statement that he possessed the brass knuckles for protection does not provide that context. The majority seeks to buttress its decision by pointing out that the defendant and a passenger were sitting in defendant's vehicle in front of an apartment where he did not live, smoking a bowl of marijuana, at which time defendant was in possession of an ounce and a half of marijuana worth a couple hundred dollars. The majority does not explain, and I do not see, how these circumstances provide inculpatory evidence to support a jury verdict that defendant intended to use the brass knuckles he had in his possession against another person. Accordingly, I respectfully dissent from the majority's affirmance of defendant's felony conviction for intending to use brass knuckles against another person.

¶ 32. I am authorized to state that Justice Robinson joins this dissent.

_____
Associate Justice

_____

weapon against a particular person, but the court's decision reinforces the notion that intent to use cannot exist in a vacuum, independent of any actual and temporal context connected to the intent element.

14