People v Graham (2024 NY Slip Op 03104)

People v Graham

2024 NY Slip Op 03104

Decided on June 6, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:June 6, 2024

113329
[*1]The People of the State of New York, Respondent,
v
Rashad R. Graham, Appellant.

Calendar Date:May 3, 2024

Before:Garry, P.J., Reynolds Fitzgerald, Fisher, McShan and Powers, JJ.

Adam G. Parisi, Schenectady, for appellant.
Weeden A. Wetmore, District Attorney, Elmira (Anne H. Stark of counsel), for respondent.

Reynolds Fitzgerald, J.
Appeals (1) from a judgment of the County Court of Chemung County (Richard W. Rich Jr., J.), rendered November 22, 2021, upon a verdict convicting defendant of the crimes of criminal possession of a weapon in the first degree and attempted criminal possession of a weapon in the third degree, and (2) from a judgment of said court, rendered January 27, 2023, which resentenced defendant.
While executing a search warrant of defendant's home in the City of Elmira, Chemung County in June 2019, police discovered an improvised explosive device (hereinafter IED). Thereafter, defendant was charged by indictment with criminal possession of a weapon in the first degree and attempted criminal possession of a weapon in the third degree. Following a jury trial, defendant was convicted as charged. County Court sentenced defendant to a prison term of 15 years, with five years of postrelease supervision, for the conviction of criminal possession of a weapon in the first degree and a concurrent prison term of 2 to 4 years for the conviction of attempted criminal possession of a weapon in the third degree. Subsequently, the Department of Corrections and Community Supervision notified the court that the sentence related to attempted criminal possession of a weapon in the third degree was impermissible, and, without a resentencing hearing, County Court amended the prison term to 1&frac13; to 4 years. Defendant appeals.
Defendant contends that the verdict with respect to the charge of criminal possession of a weapon in the first degree is against the weight of the evidence, arguing primarily that the People failed to establish defendant's requisite intent to use the IED unlawfully against a person or property. "When undertaking a weight of the evidence review, this Court must first determine whether, based on all the credible evidence, a different finding would not have been unreasonable and, if not, then it must weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony to determine if the verdict is supported by the weight of the evidence. When conducting this review, this Court considers the evidence in a neutral light and defers to the jury's credibility assessments" (People v Moore, 223 AD3d 1085, 1086-1087 [3d Dept 2024] [internal quotation marks, brackets and citations omitted]; see People v Restifo, 220 AD3d 1113, 1115 [3d Dept 2023], lv denied 40 NY3d 1094 [2024]). As relevant here, "[a] person is guilty of criminal possession of a weapon in the first degree when such person . . . possesses any explosive substance with intent to use the same unlawfully against the person or property of another" (Penal Law § 265.04 [1]).
The evidence at trial included the testimony of several Elmira Police Department officers averring that in the course of executing a search warrant of defendant's home, they found what they presumed to be an IED, broken in half, in a large plastic tote in the kitchen[*2]. Their search also revealed: several cardboard tubes — similar to the ones the IED were made out of; a plastic tote containing circuit boards and a disassembled drone; casting tape similar to the tape on the IED; three framed newspaper articles referencing, respectively, a fatal explosion, a mass shooting and a flood; several drawings and writings containing themes of animosity toward the United States and Caucasians in general; newspaper articles depicting a white nationalist rally; and two face masks — one depicting a swastika along with the phrase "Ku Klux Klan," and the other containing the word death. A sergeant from the Elmira Police Department testified that at the time of the search defendant had a surveillance system installed at the home. The sergeant confiscated it and sent it to the State Police to extract the portion of the video pertaining to the day of the search. The video footage was played for the jury. It showed defendant exiting his home while carrying the intact IED and attempting to place the IED inside both a grill and the interior of a tire prior to the police's arrival.
After the IED was discovered, a bomb technician and an acting bomb disposal commander with the State Police were called to defendant's home to determine what the device was and to make it safe for transport and examination. The bomb technician testified that the item found by the police was indeed a remote control IED. The commander testified that he placed the IED in a Kevlar bag and transported it to a bomb disposal bunker located in the City of Batavia, Genesee County. Shortly afterward, in order to safely transport the IED to a Federal Bureau of Investigations (hereinafter FBI) laboratory for testing, the commander removed approximately one and a half pounds of powder from the IED tube and sent samples of the powder to the FBI. A chemical forensic examiner employed by the FBI in the laboratory division — explosives unit — testified that the powder was a low-explosive composition containing black powder, oxidizers and fuels. He further stated that it was a low-explosive pyrotechnic designed to deflagrate.[FN1] An FBI explosives and hazardous device examiner testified that the IED contained screws to increase the device's capability of causing damage to property, or injury or death to persons. He described the IED as a destructive device with weapon characteristics, since an explosion of the container could result in the container pieces being propelled outwards at high velocities. The examiner concluded that this IED was capable of causing property damage, injury and death. Lastly, it was stipulated that defendant was not licensed or otherwise authorized to possess an explosive substance.
Here, the People generally relied on the statutory presumption of unlawful intent afforded under Penal Law § 265.15 (4). In order to be entitled to this presumption, the People must first establish defendant's actual possession of the IED. Considering the uncontroverted [*3]testimony given by the police regarding finding the IED at defendant's home, and the surveillance video showing defendant carrying the IED, the jury could rationally conclude that defendant possessed the IED. "Since the People established this predicate fact, the jury was entitled, but not required, to infer that defendant intended to use the [IED] unlawfully pursuant to Penal Law § 265.15 (4). The jury's decision to accept this inference created by the statutory presumption was reasonable" (People v Galindo, 23 NY3d 719, 724 [2014]; see People v Stagnitto, 261 AD2d 890, 891-892 [4th Dept 1999], lv denied 93 NY2d 1028 [1999]; People v Bumbury, 194 AD2d 735, 735 [2d Dept 1993], lv denied 82 NY2d 714 [1993]). Moreover, in light of the uncontradicted evidence establishing defendant's possession of the IED and other materials similar to those constituting the IED — including cardboard tubes, casting tape and circuit boards, coupled with defendant's writings depicting hostility toward certain groups of people, a different verdict would have been unreasonable, and we reject defendant's assertion that the verdict as to the charge of criminal possession of a weapon in the first degree is against the weight of the evidence (see People v Conway, 179 AD3d 1218, 1219 [3d Dept 2020], lv denied 35 NY3d 941 [2020]; People v Henry, 173 AD3d 1470, 1478 [3d Dept 2019], lv denied 34 NY3d 932 [2019]).
Defendant next argues that attempted criminal possession of a weapon in the third degree must be dismissed as an inclusory concurrent count of criminal possession of a weapon in the first degree. We agree. "A crime is a lesser included offense of a charge of a higher degree only when in all circumstances, not only in those presented in the particular case, it is impossible to commit the greater crime without concomitantly, by the very same conduct, committing the lesser offense" (People v Muniz, 193 AD3d 1116, 1117 [3d Dept 2021] [internal quotation marks and citations omitted], lv denied 37 NY3d 967 [2021]). For defendant to prevail on this claim, he must first demonstrate that it is impossible to commit the greater crime, in this case criminal possession of a weapon in the first degree, without at the same time committing the lesser crime — here, attempted criminal possession of a weapon in the third degree (see People v Meadows, 180 AD3d 1244, 1248 [3d Dept 2020], lv denied 35 NY3d 994 [2020]). "Such determination requires the court to compare the statutes in the abstract, without reference to any factual particularities of the underlying prosecution" (id. [internal quotation marks and citation omitted]).
As noted above, "[a] person is guilty of criminal possession of a weapon in the first degree when such person . . . possesses any explosive substance with intent to use the same unlawfully against the person or property of another" (Penal Law § 265.04 [1]). A person is guilty of attempted criminal possession of a weapon in the third degree "when, with intent to commit [*4]a crime, he [or she] engages in conduct" wherein "[s]uch person possesses any explosive or incendiary bomb [or] bombshell" (Penal Law §§ 110.00, 265.02 [2]). The terms explosive substance, explosive and incendiary bomb are not defined in the Penal Law. Explosives are, however, defined in the Labor Law as "gunpowder, powders used for blasting, high explosives, blasting materials, detonating fuses, detonators, pyrotechnics and other detonating agents, fireworks and dangerous fireworks as defined in section 270.00 of the [P]enal [L]aw, smokeless powder and any chemical compound or any mechanical mixture containing any oxidizing and combustible units, or other ingredients in such proportions, quantities, or packing that ignition by fire, friction, concussion, percussion or detonation of any part thereof may cause and is intended to cause an explosion" (Labor Law § 451). The terms explosive or incendiary bomb were added to Penal Law § 265.02 (2) in 1970 to cover Molotov cocktails within the meaning of the statute (see William C. Donnino, Prac Commentaries, McKinney's Cons Laws of NY, Penal Law § 265.01; Governor's Approval Mem, Bill Jacket, L 1970, ch 1012 at 22). We agree with defendant that it would be impossible to commit the greater crime — criminal possession of a weapon in the first degree — without concomitantly, by the same conduct, committing the lesser crime involving possession of an explosive, incendiary bomb or bombshell. Thus, the conviction for attempted criminal possession of a weapon in the third degree must be vacated and dismissed as an inclusory concurrent count (see People v Robinson, 117 AD3d 1099, 1101 [3d Dept 2014], lv denied 23 NY3d 1066 [2014]; People v Dinsio, 286 AD2d 517, 520 [3d Dept 2001], lv denied 97 NY2d 703 [2002], cert denied 536 US 942 [2002]).
We further agree, and the People concede, with defendant's contention that his constitutional and statutory rights to be present at sentencing were violated when County Court resentenced defendant in his absence to correct an error in the prison term for attempted possession of a weapon in the third degree (see People v McCallum, 224 AD3d 514, 514 [1st Dept 2024]; People v Perkins, 162 AD3d 1641, 1642 [4th Dept 2018]). In light of the fact that this sentence is now vacated, the matter need not be remitted for resentencing.
Lastly, defendant challenges his sentence as unduly harsh and excessive.[FN2] Having reviewed the record, we discern no basis to disturb the sentence. County Court took into consideration many factors, including defendant's mental illness, his lack of remorse and the seriousness of the offense committed. Accordingly, we decline to exercise our interest of justice jurisdiction to take corrective action (see CPL § 470.15 [6] [b]; People v McMillan, 220 AD3d 1119, 1122 [3d Dept 2023], lv denied 40 NY3d 1081 [2023]; People v Jenkins, 215 AD3d 1118, 1122-1123 [3d Dept 2023], lv denied 40 NY3d 997 [2023]).
Garry, P.J., Fisher, McShan and Powers, JJ., concur.
ORDERED [*5]that the judgment rendered November 22, 2021 is modified, on the law, by reversing defendant's conviction of attempted criminal possession of a weapon in the third degree under count 2 of the indictment; said count dismissed and the sentence imposed thereon vacated; and, as so modified, affirmed.
ORDERED that the appeal from the judgment rendered January 27, 2023 is dismissed, as academic.

Footnotes

Footnote 1: Deflagration is an explosion where the flame speed is lower than the speed of sound.

Footnote 2: As we have vacated defendant's conviction for attempted criminal possession of a weapon in the third degree, this contention is viewed solely in the context of the sentence for criminal possession of a weapon in the first degree.